## A. DEAN et al. *v.* DOROTHY J. NUNNALLY.

1. WILL: LEGACY: SUIT AT LAW FOR, WITHOUT EXECUTOR'S ASSENT.—A legatee, whether general or special, after the lapse of twelve months from the grant of letters testamentary, and where it appears, that there are no debts or demands existing against the testator, for which his legacy is liable, may maintain an action at law, to recover his legacy without the executor's assent to it. See *Worten* v. *Howard*, 2 S. & M. 530; *Magee* v. *Gregg*, 11 Ib. 70.

2. ESTATE: POWER: POWER OF SALE WILL NOT ENLARGE EXPRESS LIFE ESTATE.— A power of sale attached to an express life estate, will not have the effect to enlarge it into a fee. See Sugd. on Pow. 65; 14 S. & M. 184; 32 Miss. R. 115.

3. WILL: CONSTRUCTION OF.—In the construction of a will every part and provision must be made, if possible, to harmonize and be consistent with the other; a construction will not, therefore, be put upon a clause of doubtful import, which would make it irreconcilably inconsistent with another plain and clear provision of the will.

4. SAME: CASE IN JUDGMENT.—The testator declared it to be his desire, that his widow should have his entire estate, " to have and to hold, and to sell any part thereof, she might think best for her interest, and the interest of his children, during her natural life or widowhood;" that his entire estate should be kept

Dean et al. *v.* Nunnally.

together during the life or widowhood of his widow, and if she should survive until his two youngest children should marry or attain the age of majority, that she should give them such property, as in her judgment should seem best, and that these two children should be educated out of his estate, and upon the death of his widow, he directed a division of his property among his children, and finally he directed that D. and N. "should take his entire business in hand, and act as executors of his will." Held 1st, that the widow took a legal free-hold in the property, during her life or widowhood; and 2d, that his executors were not entitled to retain possession of and manage the estate, after the payment of his debts, and the lapse of twelve months from the date of their quali-fication.

ERROR to the Circuit Court of Marshall county. Hon. P. T. Scruggs, judge.

This was an action instituted in October, 1856, by Dean and Nunnally, executors of James Nunnally, against D. J. Nunnally, his widow, to recover possession of a slave named Edmund, part of the property of the testator, and two bales of cotton, produced by his slaves after his death. The defendant pleaded a general denial, and the cause was submitted to a jury, who found a special verdict: from which it appears, that the said James B. Nunnally, executed the following will on the day of its date, viz.:

"October 31st, 1854. This I design my last will, praying God to save my soul after death, to regard my family, for the sake of his son, Jesus Christ.

"First. My desire is, that my dearly beloved wife, Dorothy Jane Nunnally, have my entire estate (describing it), to have and to hold (and) to sell any part thereof, as she may think best for her interest, and the interest of my children, during her natural life or widowhood; and at her death or intermarriage, to be divided as follows: (here follows the names of certain of his slaves, and of certain of his children and grandchildren, to whom they were given.) I wish my entire estate to be kept together during my wife's natural life or widowhood, and at her death or intermarriage, to go as above. I wish also my wife, if spared till my two youngest children marry or come to age, to give them such property as in her judgment may seem best; and the negroes left to Virginia Frances Jamieson, I wish her to have at her marriage; and at the death of my wife, I wish my land sold on a credit, &c. I also wish my two youngest

children, Victorie and Charley, to be educated out of my estate, and then I want my entire estate divided as follows: to be divided between my children Elizabeth, Ann, Daniel A., John V., Elbert, Susan, Virginia, Victorie, Charles, James B., Jr. I wish an equal division, except Daniel A., John V., and Virginia F. I wish the three last-named children to have five hundred dollars less in the division than the rest of my children, as I think they have more given by me before. I wish my son-in-law Aaron Dean, and my son, James Bartlett Nunnally, to take my entire business in hand, and act as executors of this, my last will and testament."

The jury further found, " that said will was wholly written and signed by said testator; that some short time thereafter, the said testator died; and thereafter, in July, 1855, said will was duly admitted to probate, in the Court of Probates of Marshall county, Mississippi, and the said plaintiffs were thereupon, by said court, duly appointed and qualified, as executors of said will, and have continued, and are now acting as such.

" We further find, that the said slave Edmund, mentioned in the pleadings, is one of the slaves devised in said will, and that his value is eleven hundred dollars. We further find, that the two bales of cotton were grown this year (1856), on the land of said testator, and by the slaves mentioned in the will, and that the value of each bale is forty dollars. We further find that defendant has been in possession of all the property mentioned in the said will, since plaintiffs qualified as executors as aforesaid, and that plaintiffs demanded possession of said slave and said cotton of and from the defendant three days before the institution of this suit, and that she refused to deliver either the slave or the cotton to plaintiffs. We further find, that plaintiffs have sufficient moneys of the estate in their hands to pay off all the debts and liabilities against it, and that in fact all have been paid. If, under the foregoing state of facts, the law be for the plaintiffs, then we find for the plaintiffs eleven hundred and eighty dollars; if for the defendant, then for the defendant."

The court rendered judgment for the defendant in said verdict, and the plaintiffs sued out this writ of error.

*Walter* and *Scruggs*, for plaintiffs in error.

*Clapp* and *Strickland*, for defendant in error,

Cited *Peck and wife* v. *Glass*, 6 How. (Miss.) 213; 1 Lomax Dig. § 23, p. 43; *Lucas* v. *Lockhart*, 10 S. & M. 470; *Andrews* v. *Brumfield*, 3 George, 114; *Hunt* v. *Watkins*, 1 Humph. 498; 4 Dana, 303; *Worten's Admr.* v. *Howard*, 2 S. & M. 530; *Magee* v. *Grigg*, 11 Ib. 77.

SMITH, C. J., delivered the opinion of the court.

This was an action brought, ostensibly, for the recovery of a certain slave and two bales of cotton, which the plaintiffs claimed as the executors of the will of James B. Nunnally, deceased. The true object of the suit was to obtain an authoritative construction of the said will, in reference to the rights and authority of the executors.

The facts of the case are set forth in a special verdict. From which it appears that the said James B. Nunnally, having made and published his last will and testament, died some time in the year 1854; that by said will the testator declared it to be his desire that his widow, the defendant, should have his entire estate, real and personal, "to have and to hold (and) to sell any part thereof as she might think best for her interest and the interest of his children during her natural life or widowhood;" that at the death or upon the marriage of his widow, certain children and a grandson of the testator should have certain specified slaves; that his entire estate should be kept together during the life or widowhood of the defendant; that if the defendant should survive until the testator's two youngest children marry or attain their age of majority, that she should "give them such property as in her judgment might seem best," and that the specific legacy bequeathed to one of the testator's daughters should be delivered to her upon her marriage; that the two youngest children of the testator should be educated out of his estate; that upon the death of his widow, testator's land should be sold; that his entire estate should then be divided amongst his children, in the manner therein prescribed; and that Aaron Dean and James Bartlett Nunnally, the plaintiffs, "should take his entire business in hand, and act as the executors of his will."

It further appears that the will was duly probated in July,

1855 ; and that the plaintiffs qualified as the executors, took out letters testamentary, and proceeded to act, and had acted as the executors from the time of their appointment down to the time of rendering the verdict ; that the slave sued for, was the property of the estate, and passed under the testator's will ; and that the two bales of cotton claimed in the declaration, were produced on the testator's land by the labor of his slaves ; that the defendant was, when the verdict was found, and had been, since the grant of letters testamentary, in the full possession of the devised property ; and that the possession of the property was not needed for the payment of debts, as no debts or demands were then existing against the estate.

It appears also that the entire property was permitted to remain in the defendant's possession, without any demand, on the part of plaintiffs, for its delivery, until within a few days before the institution of this suit, which was not until after twelve months had elapsed from the grant of the letters testamentary.

Upon the foregoing facts, judgment was rendered for the defendant, and the plaintiffs sued out this writ of error.

The personal effects of a decedent vest in his executors or administrators ; first, as assets, for the payment of debts ; and then, for distribution under the will, or according to the statute. The title, therefore, to the personal property of the testator, vested in the plaintiffs in error, as his executors. They are, consequently, entitled to the possession, and to maintain an action to recover it, if withheld from them. Hence, assuming that, by the terms of the will, the executors were vested with the right to retain possession of the devised property after payment of the debts ; and that it was the manifest intention of the testator that they should have the exclusive control and management of it during the life or widowhood of the defendant in error, the judgment was clearly erroneous.

But assuming the truth of the converse of this proposition, that is, that the defendant took, not simply a use in the property, or a right to the annual income, during life or widowhood, but a legal freehold in the property itself, hence necessarily excluding the right of the executors to retain possession after the payment of the debts, it is equally clear that the judgment was correct, upon the

Dean et al. *v.* Nunnally.

facts above stated. For, upon those facts, one of two conclusions necessarily arises, to wit, that the whole property, embracing the slave in controversy, was delivered, by the executors, to the defendant, as the general legatee under the will, or that having taken possession of her legacy, she retained it with the consent of the executors. In either event, the court was bound to presume that the executors had consented to the legacy ; and, by such assent, rendered the title of the defendant in error complete to whatever interest or estate was conferred by the will. Hence, upon the hypothesis that the defendant in error acquired a life estate in the devised property, it cannot admit of doubt that the plaintiffs were not entitled to judgment.

Upon this construction of the will, for another reason, the plaintiffs were not entitled to maintain this suit. The verdict showed that more than twelve months had elapsed, after the grant of letters testamentary to the plaintiffs. No debt or demand then existed against the estate ; consequently, if they had been in possession, instead of the legatee, a retention of the legacy could not have been justified upon the ground that the legacy, or any part of it, was required to pay the debts, or to meet any demands against the estate. Under such circumstances, the defendant in error being, according to the construction on which, at present, we are proceeding, the general legatee under the will, and the only party to whom distribution could have been made, was entitled to maintain an action at law to recover the legacy, although the executors had not consented to it, and there was no final settlement of the estate. *Worten's Admr.* v. *Howard,* 2 S. & M. 530 ; *Magee* v. *Grigg,* 11 Ib. 70.

In the case of *Magee* v. *Grigg,* last cited, it was held by this court, that the assent of the executor to the possession of a legacy by the legatee, is not necessary to enable the legatee to maintain an action at law for his legacy ; and that the executor could not defend such an action on the ground that there had been no final settlement of the estate, unless he could also show debts unsettled, for which the property might be required.

In the case before us it was shown by the verdict, affirmatively, that the property was not required for the payment of the debts, as there existed no claims or debts against the estate. It is mani-

fest that the principle recognized in *Magee* v. *Grigg* applies, with great force, to the circumstances of this case, and proves clearly that if the situation of the parties were reversed in regard to the possession of the legacy, that the defendant in error could have recovered in an action at law, notwithstanding there had been no final settlement of the estate. It follows, therefore, that the plaintiffs in error were not entitled to recover the property sued for. It would be absurd to hold that the same facts and circumstances which constituted title in the defendant as against the plaintiff, gave to the latter a right of recovery against the former.

We will next proceed to examine the provisions of the will with the view to ascertain whether, as maintained by counsel for the plaintiffs in error, the testator intended to vest in the executors the exclusive possession of the property, and to give them the right to control and manage the estate, until the event should happen upon which it was to be finally distributed, or whether, as it is insisted, on the other side, he designed to give to his widow a legal estate for her own life or during widowhood, with a general power of disposition, and not a mere use in the annual products of the property.

The will is somewhat inartificially drawn, but the language is sufficiently intelligible to enable the general intentions of the testator to be arrived at.

The first clause, considered without reference to the other provisions of the will, is susceptible of but one construction. It is an express and unconditional devise of the testator's entire estate, real and personal, to his widow for life or during her widowhood; to which is appended a power to sell any part of the property which she deemed best for her interest and the interest of the testator's children. By the same clause the property devised to the widow, was given to his children, to be divided amongst them at her death or upon her marriage.

A power of sale attached to an express life estate will not have the effect to enlarge it into a fee. Sugden on Pow. 65; 14 S. & M. 184; 32 Miss. R. 115. Looking alone, therefore, at the first clause of the will, it is certain that the widow took only an interest or an estate which would terminate at her death, or upon her marriage. And it is equally certain, that it was not a use in, or

an equitable estate which attached to, the proceeds or income, but a legal estate in the property itself.

It follows, hence, that unless this disposition is controlled by the subsequent provisions in the will, the widow was not only entitled to the exclusive possession and management of the property, but also, as an incident of ownership, to the proceeds and income, during the continuance of such ownership.

The directions which are supposed to be in opposition to this construction of the first clause of the will, and which show, as it is contended, that the testator intended to give the possession, and to commit the control and management of the property to his executors are, first, the one in which he declares it to be his wish " that his entire estate be kept together during his wife's natural life or widowhood, and at her death or intermarriage to go as above;" and second, the last clause of the will, in which he says, " I wish my son-in-law, Aaron Dean, and my son James Bartlett Nunnally, to take my entire business in hand, and to act as executors of this my last will."

The latter of these manifestly conferred no power or authority, and imposed no duty or obligation upon the executors, which the law itself does not in all cases attach to the relation which they occupied. It was their duty to take possession of the effects of the testator; to cause an appraisement to be made, and to return an inventory of the assets; to collect and pay the debts; and finally, having settled the estate, to make distribution to those entitled under the will. The expression, " I wish Aaron Dean and James Bartlett Nunnally to take my entire business in hand," is without meaning or effect; and is certainly entitled to no weight, as it can throw no light on the subject, in considering the testator's intentions.

The direction or provision first quoted, if held to apply to the executors, and therefore to vest them with the right to the possession and the management of the devised property, if effect should be given to it, would, in effect, revoke the devise of the life-estate to the widow, contained in the first clause of the will. Upon this construction the two provisions are manifestly and irreconcilably inconsistent. The widow could not be entitled to a legal estate of a freehold character if the executors are entitled to the possession

and management of the property. And as her right to the usufruct or income was not conferred except as an incident to the legal ownership of the property, the widow would be excluded from all interest under the will. Assuredly this was not the intention of the testator.

In immediate connection and following the direction in regard to keeping the property together, the testator uses this language, "I wish also, if my wife (be) spared till my two youngest children marry or come to age, to give them such property as in her judgment may seem best."

This language, used in the connection in which it was, is proof conclusive that the testator did not intend to take from his widow the power of sale conferred under the first clause,—a fact which is inconsistent with the hypothesis, that he intended to give the possession and management of the property to the executors. This direction obviously proceeds on the supposition that, under the previous dispositions of the will, the widow was to have the possession and to keep the property together; which is a pregnant circumstance, going far to show that it could not have been the testator's intention in the immediately preceding clause to revoke or recall the express and unconditional life-estate given to his widow by the first clause.

Upon a careful comparison of the various provisions of the will, and a consideration of the manifest general purposes of the testator, we think it clear that he did not intend to vest in the executors the right to the possession of the property, and to confer upon them the power and authority to manage it during the life or widowhood of his wife.

It follows, from this view of the subject, that the judgment was fully justified by the facts contained in the special verdict.

Judgment affirmed.