# CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI.

*APRIL TERM, 1874, AND OCTOBER TERM, 1874.*

---

JAS. D. TATUM, Adm'r, *v.* SARAH L. McLELLAN.

1. WILLS — FEE SIMPLE — WHAT WORDS NECESSARY TO CONSTITUTE. — No technical words are necessary to devise a fee, but any words denoting an intention to pass the entire interest will suffice. 4 Kent's Com., 536. The court looks to the whole instrument to discover the intent, and although technical words may be used, their legal operation may be countervailed, if necessary to give effect to the clear intent. Lasher v. Lasher, 13 Barb., 106.

2. SAME — ESTATE FOR LIFE WHEN CREATED. — The general rule is, that a devise for life with power to dispose of the thing at death is but an estate for life, and it goes, if the devisee or legatee does not dispose of it, to the next of kin of the testator. But if given to one generally — with a general power to dispose of it at his death, then he takes it absolutely. Jackson v. Robins, 16 Johns., 537; Rail et al. v. Dotson et al, 14 Smed. & Mar., 176; Dean v. Nunnally, 36 Miss. Rep., 358.

3. PURCHASE BY TRUSTEE — WHEN VOID. — A trustee may deal with a *cestui que trust*, and may purchase his share in the fund. The *cestui que trust* may avoid the sale or he may by acquiescence confirm it. It is for him to say whether it shall stand or not. Jackson v. Van Dalfsen, 5 Johns., 46.

4. DEVISES FOR CHARITABLE PURPOSES. — Such devises are void under arts. 55 and 56, code of 1857, p. 302, and the heirs of the testator would take whatever was designed for the charity.

APPEAL from the Chancery Court of Monroe County. Hon. O. H. WHITFIELD, Chancellor.

1

The opinion of the court contains a sufficient statement of the case.

*Houston & Reynolds*, for the appellant:

1. The court erred in rendering the decree in favor of James D. Tatum for one half of the property belonging to the estate of Harvey W. Allen, as the heir of his wife the widow of Harvey W. Allen, and a devisee under his will, and in decreeing that one half of the proceeds arising from the sale of such property, be paid to Tatum.

2. A power of sale attached to an express life estate will not have the effect to enlarge it into a fee. 36 Miss., 364. It is but an estate for life, and if the devisee does not dispose of it, it goes, when there is no devise, over to the heir or next of kin. But if it be given to one generally with general powers of disposition in the devisee, he is vested with a fee. Jackson v. Robins, 16 Johns., 537; 1 Sugden on Powers (126), 144, note 1; Flintham's Appeal, 1 Serg. & Rawle, 23, 24; Donley v. Shields, 14 Ohio, 362; Edmondson v. Dyson, 2 Kelly, 311, 312; Rail v. Dotson, 14 S. & M., 176; Andrews v. Brumfield, 32 Miss., 114; Dean v. Nunnally, 36 Miss., 364; 4 Kent, 535, 536.

3. A trustee, executor or assignee cannot buy up a debt or incumbrance to which the trust estate is liable for less than is actually due thereon, and make a profit to himself; but such purchase inures for the benefit of the trust estate, and the creditors, legatees or *cestui que trust* shall have all the advantage of such trust. Perry on Trusts, §§ 428, 431; Wiswall v. Stewart, 32 Ala., 135; Gillett v. Gillett, 9 Wis., 194; McClanahan v. Henderson, 2 A. K. Marsh., 389; Green v. Winter, 1 Johns. Ch., 36; Quackenboss v. Leonard, 9 Paige, 334; Hawley v. Marcius, 7 Johns. Ch., 187; Joor v. Williams, 38 Miss., 546; Scott v. Freeland, 7 S. & M., 409; 1 Lead. Cas. Eq., 55, 131; 8 Ves., 346.

An heir, as against his co-heirs and creditors cannot hold an incumbrance for more than he gave for it; and the same rule applies to a devisee. If one of several joint purchasers buy an in-

cumbrance for less than its face, he shall hold it for his co-purchasers at the price he paid. Perry on Trusts, 431; Long v. Copton, 1 Vern., 464; Lancaster v. Evors, 10 Beav., 154; Davis v. Barrett, 14 ib.; 542; Johnson v. Blackman, 11 Conn., 342.

4. The court erred in admitting Tatum as a witness to establish a claim or defense against the estate of a deceased person. Code of 1871, § 758; Haralson v. White, 38 Miss., 178.

*J. M. Acker,* for appellee :

1. The will must be construed in such a manner that the whole will stand, if possible. All its different parts must be taken together, so that the intention of the testator may be ascertained; and the intention, when discovered, must be carried out. The rights conferred by the will are inconsistent with any other estate than that of absolute ownership. Jackson v. Robins, 16 Johns., 537. No technical words are necessary to carry a fee. " All my estate, real and personal, to be at her disposal," is sufficient. 12 Johns., 389; 2 Barb., 534. If an estate is given to a person generally or indefinitely with power of disposition, it vests a fee. 4 Kent, 535–536.

Upon the principle of equitable conversion, the court will consider a direction to convert one species of property into another for purposes valid in law, as tantamount to an actual conversion. 7 Paige, 534. Courts in dealing with the subject will consider it as that species of property into which it was directed to be converted. 5 Paige, 320; 24 Wend., 660; Ford's Eq., 318. Where after the death of the wife the executor is directed to sell the property and apply the proceeds to the payment of certain legacies, it was held a bequest of money and not of the property. 46 Barb., 470; 8 Paige, 37, 104; 2 Barb. Ch., 506.

2. A trustee will not be permitted to manage the trust estate so as to obtain any profit or advantage to himself; but whatever profits are obtained will belong exclusively to the *cestui que trust.* 1 Story Eq. Jur., 322; 4 How. (U. S.), 552, et seq. A trustee is bound to take care of the trust property as he would his own;

and as a bailee without reward, he is liable only for gross negligence. 2 Story Eq. Jur., 1269.

A trustee cannot purchase an incumbrance on the trust estate at a discount for his own benefit; but this rule does not apply to an executor who purchases a specific legacy from a legatee, unless the legatee who made the sale should complain and show that an unfair advantage had been taken. A trustee may purchase of the *cestui que trust* the trust estate, but such purchaser must be fair, and it may stand·even against the attacks of the *cestui que trust.* 33 Miss., 163; 1 Lead. Cas. Eq., 125.

The doctrine that a purchase by a trustee is absolutely void as to the *cestui que trust*, applies only in those cases where a trustee is appointed to buy or sell property, and he buys and sells to or from himself. In such cases the purchase is always held void upon application of the *cestui que trust.* Adams Eq., 184. There is no positive rule that the trustee cannot deal with the *cestui que trust;* but in order to do so he must divest himself of all advantage which his character as trustee might confer, and must prove, if the transaction is impugned, that it was fair. Adams Eq., 184; 1 Lead. Cas. Eq., 135, 144, 146. If the *cestui que trust* acquiesce in the acts of the trustee, no other person can complain. He may also confirm the sale. 1 Lead. Cas. Eq., 144; 5 Johns., 43–48; 14 ib., 407, 415; 2 Cow., 196, 238; 4 ib., 719, 744; 4 Des., 652, 705; 1 McCord Ch., 383, 389.

Being tenant for life, Mrs. Allen was entitled to all the rents and profits of the estate, and was bound to account only for the principal. 12 Wend., 433; 1 Greenl. Real Prop., 103.

The equity of the *cestui que trust* is to have the option of setting aside the sale or holding the trustee to it. Jameson v. Hapgood, 7 Pick., 1; 10 ib., 79, 111. If he elects to confirm after full knowledge of facts, neither he nor his representatives nor strangers can object. Lessee of Lazarus v. Bryson, 3 Binn., 54–58; Harrison v. Brown, 5 Pick., 519–521; Moore v. Hilton, 12 Leigh, 1; 5 Gill & Johns., 377–399.

SIMRALL, J., delivered the opinion of the court:

This litigation arises out of the construction of the will of H. W. Allen, deceased, and of the legal consequence of a purchase, made by James D. Tatum, administrator *cum testamento annexo* of said Allen, of certain legacies.

The clause of the will (the 4th) brought up for construction is in effect —

"After all my debts and funeral expenses shall have been paid, it is my will that the remainder of my estate be disposed of, in the manner following, viz : having no children, I give and bequeath unto my wife, Martha Ann E. Allen, all my estate of every kind and description not hereinafter disposed of. To have and to hold the same during her natural life, free from the control and management of any other person whatever. At her death, if she die without issue by me begotten, it is my wish and I so direct, that my entire estate, real and personal and mixed shall be sold. * * My wife shall have full power to dispose of one-half of my estate arising from said sale as aforesaid, in any manner and way she may see fit; and I further direct that my executors shall, out of the proceeds of said sale as aforesaid, give unto the children of my sister, Mrs. Franky H. Collest, * * who may then be living, ten thousand dollars each."

In a subsequent part of the will, the 9th clause, the testator directed that none of his property should be sold, unless necessary to pay debts, but that the corpus and increase should be kept together until the sale, as directed in the fourth clause.

It is alleged that Trotter, the original executor, paid off the debts, made a final settlement in 1860, and turned over the property to Mrs. Allen, the widow, who had a short time before that intermarried with James D. Tatum. In 1865, Mrs. Tatum, formerly Mrs. Allen, died, without issue, and without making any disposition by will, deed or otherwise, of the one-half or any part of the estate, as contemplated by the 4th clause of the testator's will. In 1865, Jas. D. Tatum, the appellee, qualified as adminis-

trator D. B. N., with will annexed of the testator Allen, but had returned no inventory, made no settlements, but had continued in the enjoyment of the property, in the residue, consisting of a plantation, etc., ever since.

The first enquiry is, as to the extent of estate which Mrs. Allen, the widow, took under the will.

It was remarked by Chancellor Kent, 4 Comm., 534, margin, that adjudged cases become of less authority, and are of more hazardous application, in the interpretation of wills, than decisions upon any other branch of the law. This is so, because of the very large liberty allowed in devising estates, and because of the loose, rude and perplexed language often used; and because the court in every instance attempts to reach the intent of the testator. No technical words are necessary to devise a fee; but any words denoting an intention to pass the whole interest will suffice as a devise; "*of all my estate, all my interest, all my property, all I am worth, or own, all my right or title in all that I shall die possessed of,*" or other like expressions, will carry the entire fee, if such expressions are not controlled and limited by other words. 4 Kent Comm., 536, margin. The court looks to the whole instrument, to discover the intent, and hence, although technical words may be used, their legal operation may be countervailed, if necessary to give effect to the clear intent. Lasher v. Lasher, 13 Barb., 106. If the context shows that the testator used a term in a sense other than its ordinary legal acceptation, such sense must prevail. Robertson v. Johnston, 24 Geo., 102.

A nice, but an easily discernable distinction is made in the cases, between words which carry a fee and those which convey a life estate. Thus, in Bradford v. Street, 16 Vesey, 138, the estate was given to devisee for life, who could dispose of it by deed, writing, or last will, the devisee took a fee. It was said that if the estate be for life, with unlimited power of appointing the inheritance, it comprehends everything. So in Reid v. Shergold, 10 Vesey, 378.

In Tomlinson v. Dighton, 1 Salk, 239, the devise to the wife for life, and then to be at her disposal to any of her children who shall then be living, it was held that this was only an estate for life, and the disposing power was a distinct gift because the estate given is express and certain, and the power comes in by way of addition, and differs from the class of cases where the devise is to A. to sell, or to A. and that he shall sell, here the devisee is empowered to convey a fee, and is therefore construed to have one — he having no express estate derived from the power.

The distinction is made with great clearness by the judges in seriatim opinions, in Flintham's Appeal, 11 S. & R., 18, by Tighlman, C. J., by Gibson, J., p. 19, by Duncan, J., pp. 23 and 24, and by Kent., C. J., in Jackson v. Robins, 16 Johns., 537. If a bequest be of an estate a sum of money to a person to be disposed of at his death as he pleases, it rests in the devisee or legatee absolutely, though he make no disposition by will or otherwise. Gibson, J., said, " a power of disposition at death, engrafted on an express limitation for life, will not enlarge the interest of the leg atee by implication." Duncan, J., said, " all the authorities agree, that a devise for life, with power to dispose of the thing at his death, is but an estate for life, and it goes, if the devisee or legatee does not dispose of it, to the next of kin of the testator, unless he has devised it over. But if given to one generally — with a general power to dispose at his death — then he takes it as property absolutely."

In Jackson v. Robins, supra, Chancellor Kent, after an exhaustive examination of the authorities, thus sums up : " We may lay it down as an incontrovertible rule, that where an estate is given to a person generally or indefinitely, with a power of disposition, it carries a fee, and the only exception to the rule is where the testator gives to the first taker an estate for life only — by certain and express words, and annexes to it a power of disposition." In this case the devise was all (testator's) real and

personal estate to his wife, and in case of her death, without giving, etc., by will, or otherwise selling or assigning the said estate, then a devise to his daughter — held the devise over to be void as a remainder, or executory devise; and the wife took the whole estate.

In Rail *et al.* v. Dotson *et al.*, 14 S. & M., 183 – 4 – 5, the court affirms the rule, as expounded in this last case by an express reference to it — and also 1 Sug. Pow., 119. . In that case the devise was "that said Mary Hume shall have the entire control and disposal of the land and negroes devised to her, for life, and at her death should be divided among her children, and should she die without children, then over to testator's surviving children." By codicil, Mrs. Amelia A. Calhoun was substituted trustee for Mary Hume in place of one Harding, and allowed the said Mary the management, possession, use, etc., of the property, to sell and exchange the same, and she shall have full power to dispose of the same by last will. After stating that power of "sale and exchange" meant nothing more than that the estate might be converted into other property of the same character to be settled to the same uses — the court declare, that it was "an estate in (Mary Hume) for life with power of sale and exchange or a power of disposition by will superadded. Such powers do not enlarge the life estate into a fee simple.

In the later case of Dean v. Nunnelly, 36 Miss. Rep., 358, "the devise runs to the wife, to have and to hold and to sell any part of the estate that she might think best for her and her children's interest, during her natural life or widowhood — held that the widow took a life estate in the property — or during widowhood, affirming the ruling in 14 S. & M., 184. In Andrews v. Brumfield *et al.*, 32 Miss., 109, the devise runs to the wife * * to have and to hold and enjoy during her natural life." In a subsequent clause the property was directed to be delivered into her possession, as soon after testator's death as possible — "that she may have full control of the same, and be empowered to dispose of the same as she may think proper."

After adverting to terms which have been held to create an ab-solute estate, the court add: If an express life estate had not been limited to Mrs. Andrews, there can be no doubt that a mere power would not have been conferred, but that she would have taken a fee * *. As it is, a mere power was given. For a power appended will not enlarge the life estate into a fee simple.

Returning to the will of H. W. Allen, and bringing the clause in question to the test of these authorities — and it appears that by apt and technical words, a life estate is expressly conferred upon Mrs. Allen, embracing the entire property, then follows the direction : " At her death, *if she die without issue by me begotten,* my entire estate, real, personal and mixed, shall be sold. My wife shall have full power to dispose of one-half of my estate, arising from said sale, in any way and manner she shall see fit," * *, etc. Directions are then given to the executors, to pay from such proceeds summary legacies. The power of disposition, over half the proceeds of the sale is appended to the life estate — nor is the power absolute, for it is dependant on there being no issue begotten by the testator, living at the time of the wife's death. If there had been issue the reversion would have been to them, and the contingency would have occurred, depriving Mrs. Allen of the power.

Whenever the intention is apparent, it will be carried into ef-fect, if it do not contravene some positive rule of law. 4 Kent Com., 318. Rail v. Dotson, 14 S. & M., 184. What is the mani-fest scheme of the testator, as respects the disposition of his estate?

Preparatory to the provision for his wife, the testator recites the fact that he "has no children;" after making a most ample pro-vision for his wife, the thought occurs, that there was the proba-bility or the possibility of issue coming into being, and he ad-dresses himself to that contingency, and by implication says : if a child or children shall be alive at the death of his wife, then such child or children shall take the reversion under the law.

But if at that time there be no issue of the marriage, my whole estate shall be converted into money, and my wife shall have power to bestow one-half of it, upon such objects of bounty as she may choose; and the executors shall, out of the other half, pay certain legatees the sums respectively named. The residue of the estate, not otherwise devised, is, by the 8th item, given to the quarterly meeting conference of the Aberdeen circuit, for the education of the children of superannuated preachers. Such was the intention of the testator, fairly deducible from the entire will — read and construed by those rules of interpretation commonly applied to any composition for the purpose of attaining the meaning of the author.

The courts have held, that a power of disposition superadded to a life estate, does not enlarge it into a fee simple, because such must have been the intention; else why, by express words, only confer a life estate — what effect is to be given to that limitation — other than the plain words import?

We are of opinion that under the fourth clause of the will, Mrs. Allen took a life interest in the whole estate, with power to appoint who should take and enjoy the half of the proceeds of a sale after her death. And that her surviving husband Tatum has no interest over such half, not being the dowee or appointee of his wife.

The second enquiry is, whether the appellee shall be permitted to hold the several legacies bought by him, with the same benefits as the legatees from whom he purchased, so that he may retain the respective amounts in full, or *pro rata* with other legatees, out of the assets; or whether he should only be allowed the amount advanced for the purchase, and interest thereon.

It would not be controverted that an executor or administrator is subject to all the responsibilities as respects creditors, and distributees and legatees, as is the strict trustee to the *cestui que trust.* They owe fidelity to those for whom they act. Their duty is expressed by Perry on Trusts, § 427. All the power and influ-

-ence which the provision of the trust fund gives must be used for the profit and advantage of the beneficial owners, and not for the personal gain of the trustee. "They cannot use the trust property, *nor their relation to it,* for their own personal advantage." But the failure of due fealty to duty is, that Tatum purchased several of the legacies. It is not exactly seen how the parties to this suit can complain of that. If the act were injurious or fraudulent, it is not seen how it falls upon the objectors. The testator intended to dispose of his entire estate. He supposed that he had done so by bestowing upon his wife a life estate, and a power to name an appointee or dowee for half of the fee, and the various legacies to be paid out of the property, and then instituting a residuary legatee. He doubtless supposed that his wife would exercise the power. In that view of it, if she did, then the other half would alone be responsible for the specific legacies; if she did not, the scope of the will is, that the specific legacies were to be paid out of the sale money, although more than half of it might be required. The mind of the testator was to pretermit his heirs altogether. When the contingency arrived, upon which a sale was to be made, the entire estate must be turned into money, and the desire is clear, that its proceeds should pay off the specific legacies, and the residuum go to quarterly conference. The power not having been used, the whole estate became subject to specific legacies, if indeed so much were needed. The heirs of the testator would take whatever residuum was designed for the charity, after discharging specific legacies. Such bequests being void — code, 1857, arts. 55 and 56.

But whilst it is conceded that Tatum's purchase is voidable, and would be set aside at the suit of the legatees, who were sellers to him, how are the other parties affected or injured by those transactions? There is no doubt that the principle contended for applies, when the administrator brings in a debt or mortgage, for there are prior charges upon the estate to the claims of legatees. But if the administrator takes the assignment of the interest of

a distributee at a price, much below its value, can that be said to be injurious to a codistributee, if the latter gets his distributive share?

Tatum could not buy in a debt or mortgage and hold it for its full amount against the legatees. But he could deal with a legatee for his claim, and whether he gave much or little, other legatees would not complain. But there are several difficulties in the way. A purchase by a trustee, of a part or the whole of the property, is not *per se* void, it is voidable or not, at the election of the *cestui que trust.* Tatum's purchase of these legacies might be set aside on the complaint of the legatees who sold. Because, if he has availed of his relation and superior advantages of knowledge to make an unconscionable bargain, that injury was inflicted upon the legatees with whom he dealt. It would be precisely like the case of an administrator who should buy the interest of a distributee; the codistributees are not interested in or affected by the amount paid, or the hardness of the bargain. Their claims on the distributive fund are not increased or diminished by such a transaction. It is a question exclusively between the administrator and the distributee.

It is not seen how the other legatees are prejudiced by Tatum's purchase. They should be paid in full, if the funds are sufficient, if not, there should be a proportional abatement. And, either in the former or latter case, it does not concern them whether the original legatees, or their assignee, are recipients of the money. A trustee may deal with a *cestui que trust,* and may purchase his share in the fund. The *cestui que trust* may avoid the sale, or he may, by acquiescence, confirm it. It is for him to say whether it shall stand or not. Jackson v. Van Dalfsen, 5 John., 46, 47.

We think that the other legatees or their representatives, and others interested in the fund, cannot object to the purchase made by Tatum.

The principles which should guide in the final disposition of the controversy, lead to these results:

1. The whole estate should be converted by sale into money which should be applied to the payment of the specific legacies, with interest, after twelve months from the death of Mrs. Tatum.

2. James D. Tatum, the purchaser and assignee of a portion of these legacies, as against the other legatees and the heirs and distributees of Allen deceased, the testator, should, in the apportionment of the money, stand on the footing of his assignors.

3. The heirs-at-law, succeeding to what was intended for the residuary legatees, the Quarterly Conference of the Aberdeen Circuit would be entitled to the residue of the money.

Decree reversed, and cause remanded.