# Wheeling.

## MILHOLLEN'S ADM'R v. RICE, et al.

(Absent, Haymond, Judge.)

Decided July 6, 1878.

William Milhollen died in 1837, leaving a will, the first clause of which was as follows: "I desire that the personal part of my estate be sold, or so much thereof as will satisfy and pay all my just debts and funeral expenses; and the balance of said property to remain on the plantation for the benefit of my wife, Eleanor Milhollen, to use or dispose of at her discretion during her natural life, and also to have the right of disposal at her death; and also it is my desire, that all the lands belonging to me shall belong to my wife during her natural life, to use in any way she may think proper during her life, and at her death the land is to be sold, and the money arising from said sale, the one half of it to go to my heirs, including Andrew Milhollen, the son of Mary Akeman, and the other half of the proceeds, arising from said sale, is to be at her disposal, to whom she thinks proper of her heirs." HELD:

I. This clause of the will gives to the wife the personal estate, in absolute property; the gift of it for life, with power to consume or dispose of the principal at her discretion, being construed to amount to amount to giving her the absolute property.

II. She had but a life estate in the lands. If a moiety of the lands themselves had been put at her disposal, instead of the proceeds of a sale thereof she would have had a fee simple in a moiety of the lands. As by the will then she would have had a life estate, and her heirs the remainder in fee simple; and the rule in *Shelley's case*, which was in full force till 1849, applying, her life estate would have been converted into a fee simple estate. But as she could by this will dispose of, to her heirs the proceeds of the sale of the land, but not the land itself, the in-

terest conferred by the will on her heirs was personalty; and her life estate being in land, the two could not unite under the rule in *Shelley's case*, and give her a fee simple.

III. She had no ownership in this moiety of the proceeds, of the sale of the land. Had she been authorized to dispose of any portion of the personal estate of her husband, in which no estate or interest had been given her, and this power of disposal had been absolute, she would have had absolute property in such personalty, over which she was given such absolute power of disposal; but having been given expressly a life estate in this land, the power to dispose of it, or of its proceeds, could not enlarge her life estate in the land, or give her any ownership in the proceeds of the sale thereof, after her death. She had in these proceeds a power to dispose of them, but no ownership.

IV. This power of disposal, conferred on the wife, was a power in the nature of a trust; and she having died without executing it, this moiety of the proceeds of the land should go to her heirs, and if she had more than one, it should be equally divided among them.

V. She having died in 1873, her sole heir, under the provisions of our Code then in force, was her surviving husband, she leaving no children or descendants.

VI. The word, heirs, in this will cannot be construed to mean heirs apparent, that is her next of kin at the testator's death.

VII. If the devisee of a life estate is simply authorized to dispose of the property at her death among a certain definite class, as she may think proper, this will be held to be a power in the nature of a trust, unless it otherwise appears from the will, that the duty to execute such a power, to be inferred from its being granted, was designed by the testator to be left to be performed or left unperformed at the option of the party, on whom such power was conferred. The rule being, that when there appears a general intention in favor of a class, and a particular intention in favor of individuals of the class, and the particular intention fails, from that selection not being made, the court will carry into effect the general intention in favor of the class.

Appeal from a decree, rendered in the circuit court of Monroe county, on the 17th day of May, 1876, in a cause in chancery, in which A. N. Campbell, administrator *d. b. n. c. t. a.* was plaintiff, and John Rice and others were defendants, allowed on petition of said Campbell.

*Hon. Homer A. Holt,* Judge of the eighth judicial circuit, rendered the decree appealed from.

GREEN, PRESIDENT, furnishes the following statement of the case:

William Milhollen made his will, January 19, 1837, and died shortly afterwards, leaving a widow, Eleanor Milhollen, but no children. He had two brothers and four sisters, who all had children and grandchildren; which of his brothers and sisters were living at the time of his death is unknown; and the names and residences of many of their children and grandchildren are still unknown. One of his sisters had an illegitimate child, Andrew Milhollen. He left a considerable estate, personal and real, which he disposed of by his will, which made his wife, Eleanor Milhollen, his executrix. She qualified as such and took possession of his estate real and personal. One of his negroes was sold; and the proceeds went into the hands of Ballard. His widow afterwards married Alderson, who died shortly afterwards; and she then married John Rice in 1855, he entering into a marriage settlement with her before her marriage.

She died August 7, 1873, intestate. She never had a child; but her husband, John Rice, survived her and qualified as her administrator. She neither in her lifetime nor by will ever made any disposition of the personal or real estate of William Milhollen, her first husband, under the power given her by his will. After her death Samuel A. Clark qualified as the administrator *de bonis non,* with the will annexed of William Milhollen, and sold his real estate.

Eleanor Rice, formerly Eleanor Milhollen, left collateral kindred, most of whose names and residences are unknown. Samuel A. Clark, the administrator *de bonis non* with the will annexed of William Milhollen, deceased, after the sale of this land instituted this suit in April, 1874, in the circuit court of Greenbrier, to obtain a con-

struction of the will of William Milhollen, and the direction of the court, how he was to pay out the funds of the estate in his hands. The heirs of William Milhollen, certain parties claiming to be collateral relations, and the nearest blood relations of Eleanor Rice, formerly Eleanor Milhollen, John Rice, her husband, in his own right and as her administrator, Andrew Milhollen, named in the will of William Milhollen, and B. F. Ballard are parties defendant to this suit.

Pending this case in the circuit court the plaintiff died, and the suit was revived in the name of A. N. Campbell, administrator *de bonis non* with the will annexed of Wm. Milhollen, deceased. Several answers were filed by heirs of William Milhollen, parties claiming to be heirs, or next of kin, of Eleanor Rice, John Rice and B. F. Ballard.

By Ballard's answer and exhibits, filed therewith, it may be inferred, that the slave Ben, being prosecuted by the State for a crime, was ordered to be transported, and was sold, and the proceeds of sale came by order of the court into the hands of Ballard, who under the order of the court paid over the interest of the proceeds of the sale to the life tenant, Mrs. Rice, during her life; but after her death he did not pay over the principal, because it was claimed by Wm. Milhollen's administrator *de bonis non* and by John Rice, and he did not know, who was entitled thereto. The amount of this principal in his hands was the sum of $675.00.

The widow of William Milhollen, then Mrs. Alderson, before her marriage with John Rice, made with him a marriage contract, which has, in the view taken by this Court of the case, no influence upon the decision of this case, and need not therefore be set forth at large. By this agreement each party agreed, that the other should hold and possess the property they then had, to their own separate use and benefit, free from the control of the other party, as if the parties were unmarried; and John Rice relinquished and discharged all claim

65

to every part of the property, real and personal, of Eleanor Alderson, formerly Mrs. Milhollen, to which on said marriage taking place he might be entitled.

The will of William Milhollen is in these words :

" In the name of Good Am*a*ne

" I William Milhollen, of the County of Monroe and State of Virginia d*u* hearby make my last will and testiment in man*e*r and form as following: that is to say.

I dsi*a*r that the person*e*l part my estate to be s*a*d or so mu*t*ch of it as will satisf—and pay all my just debt and Funerel expen*c*s and the ball*i*a*c*e of said property to remain on the plantation for the benefit of my wife Elleanor Millhollen to use or dispose of at h*u*r dec*r*ation during h*u*r natural life and also to have the right of disposel at h*u*r deth and al*l*s it is my desire that all the lands blonging to me shall belong to my wife during herr natural life to use in any that she may think proper during h*u*r life and at h*u*r deph the said land is t*e* sold and the money arising from said s*a*ile the one half of it to go to my lawful *a*irs including Andrew Millhollen the s*u*n of Mary Akeman and the other half of the moneys aris*e*ing from said s*a*i*l is be at h*u*r disposel to *hum* she thinks proper of of her*r* *a*irs—3 I desi*er that my two negros Agness & Benjamine and th*a*re inc*r*eess is *a*l*l*s belong to wife Ellaner Millhollen during h*u*r natural life and at h*u*r deth the said negros is to s*o*ld and the money arising from said s*a*i*l to go to my lawful *a*irs as before mentioned, 3 and lastly I do hea*r*by constitute and appont my wife Ellaner Millhollen my Exector of this my last will and testiment hea*r*by revaking all other or former wills or testiments by me hea*r*tofore made in witness whar*e*of I have set my hand affixed my s*e*el the 19th day of Jen*u*ary 1837.

WILLIAM MILLHOLLEN, [Seal.]

" Witness :

" JOHN CLARK.

" HARRIET JOHNSON.

his
" PETER ⋈ FLETT."
mark

On May 17, 1876, the court rendered the following decree :

1878
June Term.

Milhollen's
adm'r
v.
Rice et al.

" This cause came on this 17th day of May, 1876, to be heard upon the bill and amended bill of the plaintiff, and exhibits therewith filed, and answers of John Rice, J. S. Sims, B. F. Ballard and the joint answer of Patsy Trussler, ——Lindsay and John Alderson, and replication to all of said answers, and the process duly served upon the resident defendants, and order of publication duly published against the non-resident defendants and others by the name of unknown defendants, and the bill and amended bill taken for confessed as to the parties, who have not pleaded, answered or demurred, and was argued by counsel. On consideration whereof, the court is of opinion and doth adjudge, order and decree, that according to the true construction of the will of William Milhollen, deceased, John Rice is entitled to the one-half of the proceeds arising from the sale of the lands mentioned in said will, and that the heirs of William Milhollen, deceased, including Andrew Milhollen, the son of Mary Akeman, are entitled to the other half of the proceeds of said sale, and that the said heirs of William Milhollen, deceased, together with Andrew Milhollen, the son of Mary Akeman, are entitled to the proceeds of the sale of the negro in the bill and proceedings mentioned. Wherefore, the court doth further adjudge, order and decree, that the said John Rice do take the one-half of the proceeds arising from the sale of the land as before mentioned, and that the heirs of the said William Milhollen, together with Andrew Milhollen, the son of Mary Akeman, take the other half of the proceeds arising from the sale of said lands, and the proceeds of the sale of the negro before mentioned."

This decree then refers the case to a commissioner, to settle the accounts of the two administrators *de bonis non* with the will annexed of William Milhollen deceased; and to ascertain, who are William Milhollen's heirs, and the amount of money, principal and interest, in the hands of B. F. Ballard, and any other matters deemed pertinent by the parties.

The Judge in rendering this decree pronounced an elaborate opinion in writing, which, though not made a part of the record, has been used in the argument of this cause in this court. From this decree, A. N. Campbell, the administrator *de bonis non* with the will annexed of William Milhollen, deceased, has taken an appeal to this court.

*A. N. Campbell,* for appellant, cited the following authorities:

3 Leigh 348 ; 1 Wash. 266 ; Wythe (Va.) Minor's ed. 159 ; 4 Call 308 ; 12 Gratt. 135 ; 5 Call 150 ; 2 Wash. 74 ; 1 H. & M. 212 ; 2 Preston on Est. 81, 82 ; 13 Ves. 453 ; 52 N. H. 267 ; 13 Am. R. 32 ; 10 Leigh 394 ; 1 Ves. Jr. 270 ; 4 Kent Com. (1866) 216 ; *Id.* 337 ; 21 Penn. St. 348 ; 2 Redf. on Wills (1870) 338 ; Jefferson's Works, vol. 1, p. 31 ; 4 Kent Com. (1866) 215 ; 1 Prest. on Est. 263, 419 ; 1 Coke (Thomas ed.) 106 B. & note I. 5 ; 23 Wall. 488 ; 17 Wall. 642, 11 Gratt. 789 ; 1 Coke (Thom. ed.) 263, and cases there cited ; 5 Ves. 507 ; 1 Perry on Trusts 317, §252 ; 2 Roper on Leg. 1425 ; Hill on Trustees 68 ; 2 Roper on Leg. 1417, 1418 ; 2 Serg. on Pow. 161, 152 ; 5 Ves. Jr. 849 ; 3 Bro. C. C. 95 ; 2 Vern. 665 ; 1 Ves. Sen. 57 , 1 Ves. Jr. 143 ; 2 Ves. Jr. 124 ; 2 Y. & J. 506 ; 2 Ry. & M. 78 ; 2 J. & W. 431 ; 2 Serg. on Pow. 165, par. 17 ; *Id.* 167 ;. Hawkins on Wills 61 ; 5 Myl. & Co. 72 ; 3 Ves. & Bea. 198 ; 3 Lead Ca. in Eq. 515 ; 3 Kay & J. 529 ; 1 Atk. 469 ; 4 Ves. 708 ; 5 Ves. 595 ; 8 Ves. 561 ; 18 Ves. 475 ; 2 Mad. 458 ; 2 Bro. C. C. 38 ; 3 Mer. 437 ; 2 Rop. on Leg. 1418, 1424 ; Hill on Trustees 71, 72 and notes ; 20 Penn. St. 268 ; 1 Sim. 504 ; 3 Sandf. 555 ; 2 Redf. on Wills 409 *et seq.* ; 1 Perry on Trusts 317, §248 *et seq.* ; 3 Lead. Ca. in Eq. 499 ; 9 Gratt. 590 ; 22 Gratt. 230 ; 16 Ves. 135 ; 19 Ves. 86 ; 2 Willes 67 ; 7 Jur. N. S. 389 ; 10 W. Reporter 592 ; 11 Gratt. 785 ; 1 Am. L. Reg. 94 ; *Id.* 96 ; 20 Gratt. 692 ; 4 Russ. 263 ; 16 Johns. 537 ; 3 Otto 326 ; 10 W. Reporter 592 ; 2 Redf. on Wills 412, note

1878
June Term.

Milhollen's
adm'r
v.
Rice *et al.*

12; Hawk. on Wills 94, 99 : 1 De G. M. & G. 502; 18 Gratt. 535; Wig. & O. H. on Wills part 2, p. 297; *Id.* 211; 2 Wall. Jr. C. C. 368; 1 Perry on Trusts 109; Hill on Trustees 71; Hawk. on Wills 159; 2 Redf. on Wills 338; 1 Sugd. on Pow. 121, 126; 3 Ad. & E. 123; 2 Prest. on Est. 102 m.; 2 Washb. R. P. 320; 1 Sug. on Pow. (1856) 242; 2 *Id.* 22; 7 Johns. Ch. 85; 13 Am. R. 27; 2 Lom. on Ex. (1856) 18, and cases cited.

*A. C. Houston,* for appellees, relied on the following authorities :

2 Burr. 1100; Jarman's Rules of Construction No. X., XVII note 1.; 4 Macq. H. L. Cas. 571; 5 Den. (N. Y.) 646; 9 Paige 521; 3 Bradf. Sur. 287; 18 B. Mon. 329; 1 P. Wms. 229; 6 Con. 210 (2 Bl. R.); 1 Den. (N. Y.) 165; 22 Me. 263; 5 B. & C. 48; 7 Bing. 226; 2 Desau. (S. C.) 57; *Id.* 18; Dev. (N. C.) Eq. 18; 5 Ves. 402; 2 Gratt. 1; 22 Me. 257; 8 Ves. 570; 4 Ves. 708; 5 Nes. 495; 5 Myl. & Cr. 92; 3 Lead. Cas. in Eq. 793; Hill on Trustees 73, note; 3 Ves. & Bea. 198; 1 Va. R. 27; 9 Ves. 319; 2 Phil. 493; 3 Sandf. 555; Hill on Trustees 69; 2 Sug. on Pow. 162; *Id.* 164; 4 Kent Com. 343, 344; 2 Cox 396; 6 Leigh 461; 13 Ired. Eq. 332; 1 Ves. Jr. 270; 2 Roper on Leg. 1526; 1 Perry on Tr. §249; O'Hara on Wills 212; Bispham on Eq. §88; *Id.* §320; Perry on Trusts 124; 6 Sim. 52; 2 Allen 101; 2 Tuck. Com. 440, 441; 4 Call 305; 11 Gratt. 788; 1 Jarman on Wills 326; Keyes on Chattels §§73, 78; Schouler Dom. Rel. 266; *Id.* 190; *Id.* 220; Bish. on Married Women 423, 427; 9 Rich. Eq. 434; 8 Gray 542 : 8 Gratt. 486; 3 Leigh 255; 9 How. (U. S.) 196; 8 B. Mon. 128; 3 Leigh 357; 5 Leigh 222; 2 Stra. 1118; 2 Story Eq. Jur. §1382; 13 Ves. 445, 451; 16 Ves. 135; 15 Ves. 532; 4 Watts & S. 546; 20 Ala. 338; 3 Mac. & G. 546; John. C. C. 276; 3 Kay & J. 529; 3 Ves. & Bea. 198; 1 Bro. C. C. 12; 1 Mad. 365; 6 Rand. 594; 1 1 Johns. Ch. 252; 3 Leigh 12; *Id.* 183; 1 Lomax on Ex. (2d ed.) 585, note; *Id.* 219; 10 Pet.

532, 564; 9 Gratt. 590; Lewin on Trusts 324; 14 Gratt. 309; 2 Sug. on Pow. 162; 11 Gratt. 790; 1 Lead. Cas. in Eq. 659; 1 Rand. 320; 8 Paige 106, 124, 129; 2 Gratt. 280; Pennington 754; Baldwin 166; *Id.* 177; 15 Ark. 680; 1 Lead. Cas. in Eq. 800; 10 Ves. 129; 3 De G. M. & G. 190; 10 Hare 19; 2 Jones Eq. 113; 3 Ired. Eq. 204; 3 Leigh 419, 428; 6 Gratt. 66, 77; 2 Ves. 333; 1 Roper on Leg. 630; 4 Kent Com. 212; 1 Redf. on Wills 413; 20 Pick. 579; 5 Ves. 402; 3 Bro. Ch. 224.

*W. W. Adams,* for appellees, cited the following authorities:

3 Leigh 356, 357; 2 Rob. (old) Prac. 100; Vin. Ab. (Devise) W. a. pl. 4. p. 234; 1 Sug. Pow. 120, 121; *Id.* 126; 1 Leon. 283; 3 Leon. 71; 1 Wash. 266; 6 Sim. 568; 4 Call 305; 5 Call 150; 12 Gratt. 135; 2 Pres. Est. 81, 82; 13 V. 453; 12 Gratt. 135; 20 Gratt. 692; 1 P. Wms. 754; 1 Ves. Jr. 220; 19 Ves. 86; 2 Wils. 67; 16 Ves. 135; 1 Rand. 229; 2 Gratt. 280; 5 Hare 144; 2 Sug. Pow. 159, 162, 174, 179, 247, 245, 248, 249; Hill Trust. 67 *et seq.*; Hawk. Wills 94, 99; 1 De G. M. & G. 502; 14 Beav. (94 E. L. & Eq.) 63; 8 Hare 301; 9 H. L. C. 1; 1 Jar. Wills 486; Wigram on Wills. part 2, p. 297; 2 Wall. Jr. C. C. 368; 5 Leigh 20; 9 Leigh 29; 11 Gratt. 67; 18 Gratt. 535; Hawk. Wills 94; 4 Kent Com. 535, 536; *Id.* 229, 230.

GREEN, PRESIDENT, delivered the opinion of the Court.

William Milhollen died in 1837, leaving a wife but no descendants. He made a will, the true interpretation of which is sought by his personal representative, who instituted this suit for that purpose. By this will the testator appointed his wife his executrix, and bequeathed to her two negroes during her natural life, and directed, that after her death they should be sold, and their pro-

ceeds to go to his heirs. The residue of his personal estate he gave to his wife, "to use or dispose of at her discretion during her natural life;" and he also provided, that she should have the right of disposing thereof at her death.

There is no controversy with reference to the disposition, made by this will, of the two negroes, the will being clear with regard to the disposition to be made of them. The circuit court put no construction on the provisions of this will, as to the disposition of the residue of his personal estate, as but little, if any of it, remained for distribution. It is however proper, to consider the true meaning of the testator in the disposition of this residue of his personal estate, as it will aid in interpreting his meaning in the clause of his will, whereby he disposes of his real estate, the true construction of which is much controverted.

It is settled, that if a testator gives property to a devisee or legatee, to use or dispose of at his pleasure, that is to consume or spend, sell or give away, at his pleasure, such devisee or legatee has the fee simple or absolute property, even though his interest in it be called by the will a life estate, and there be a provision in the will, whereby what may remain of the property at the death of the devisee or legatee, is given to another person. See *Pushman* v. *Filliter,* 3 Ves. Jr. 7; *Bull* v. *Kingston,* 1 Meriv. 214; *Attorney General* v. *Hall,* 8 Vin. Abr. 103 50; *Bradley* v. *Westcott,* 13 Ves. 445, 457; *Sprague* v. *Barnard, &c.* 2 Bro. C. C. 585; *Eade* v. *Eade,* 5 Madd. 118; *Cuthbert* v. *Parrier Jacobs,* 415, (4 Cond. Eng. Ch. 191); *Bourn* v. *Gibbs,* 1 Taml. 414 (5 Com. Eng. Ch. 457); *Green* v. *Harvey,* 1 Hare 428 (23 Cond. E. Ch. 428); *Huskison* v. *Bridge,* 3 Eng. L & Eq. 180; *Ide* v. *Ide,* 5 Mass. 500; *Jackson* v. *Bull,* 10 Johns. 19; *Jackson* v. *Robbins,* 16 Johns. 537, 589; *Helmer* v. *Shoemaker,* 22 Wend. 119; *Flinn* v. *Davis,* 18 Ala. 132; *Riddicks* v. *Cohoon,* 4 Rand. 547; *Madden* v. *Madden's ex'r,* 2 Leigh 377, 385; *Burwell* v. *Anderson,* 3 Leigh

Syllabus 1.

348, 355; *Nelson* v. *Cooper*, 4 Leigh 408; *May* v. *Jones*, 20 Gratt. 692; *Spinkle et al.* v. *Hayworth*, 26 Gratt. 584.

There can be no doubt, that William Milhollen by his will intended to give to his wife the right to consume or spend, sell or give away, as she pleased all his personal estate, other than the two negroes. If she had but a life estate in the residue of the personal property, then it would on her death have gone to his distributees, as undisposed of by his will; that is it would have gone in the precise manner, that his will directs the two negroes to pass. Yet it is obvious, that he intended to give to his wife a larger interest in this residue of the personal estate, than in these two negroes.

It is also obvious, that this distinction made by the will between his other personal property and the two negroes named, did not arise from the different character of the property, for the testator owned a third negro, which by his will was included with the residue of his personal property, over which he gave his wife power to use or consume, sell or give away, as she pleased; for so the words " to use or dispose of at her discretion during her natural life, and also to have the right of disposal at her death" must be interpreted. She had therefore absolute property in all his personal estate, other than the two negroes, it being the obvious intention of the testator to give her such complete ownership. And she having died intestate, the residue of his personal estate, if any remained on her death, would then pass as her other estate. We will hereafter consider the question, to whom her estate real and personal passed at her death.

The next enquiry is: What estate had the testator's widow in his real property? Did she have a life estate in one moiety thereof, and a fee simple in the other moiety; or did she have only a life estate in the whole of the testator's real property?

It appears, from an elaborate written opinion of the circuit Judge, used in the argument of this cause, though not a part of the record, that the circuit court was of

opinion, that she had a fee simple in the one moiety of the testator's real property. This I think was an erroneous construction of the will. The language of the will disposing of the real property is : "it is my desire, that all the lands belonging to me shall belong to my wife during her natural life, to use in any way she may think proper during her life, and at her death said land is to be sold, and the money arising from said sale, the one half of it to go to my lawful heirs (including Andrew Milhollen, the son of Mary Akeman), and the other half of the moneys arising from said sale is to be at her disposal, to whom she thinks proper of her heirs." Andrew Milhollen was an illegitimate child of one of the testator's sisters. He left no child or descendant, but brothers and sisters, or their descendants.

The words of the testator: "to use in any way, that she may think proper during her life" are very different from those used by him in disposing of the personalty, other than the two negroes. His language with reference to it is : "to use or *dispose* of at her discretion during her natural life." And he further provided with reference to this personalty, that she was to have the right of disposing of it at her death. That is, he gave an unlimited power to her to dispose of it, to whomsoever she pleased. But in reference to this moiety of the real estate she had only the power, to dispose of it to such of her heirs, as she thought proper.

While, as we have said, it was obvious, he gave her the right to use or consume, to sell or give away, to whomever she pleased this personal estate, it is equally obvious, that he did not intend to confer on her by the words : "to use in any way, that she may think proper during her natural life," a like unlimited power over his real estate, or any part thereof. All, that the testator meant by these words, was, that during her life she might use his real estate in any way, she thought proper without impeachment for waste. No power is given her, as in the bequest of personal property, to dispose of it during

1878
June Term.

Milhollen's
adm'r
v.
Rice *et al.*

her life.   Her right was only during her life to use this
property.   It is true, she had, under these words of the
will, a right to use it in a manner, which other tenants
for life have not; she could cut timber, or commit other
waste, as she was given the right to use it in any way,
she thought proper.   But no power to dispose of it was
conferred by these words.

The substance then of the testators will with reference
to this moiety of his real estate was, that his wife was to
have in it a life estate, and at her death it was to be
sold, and the moneys, arising from the sale, were to be
at her disposal to one or more of her heirs, as she
thought proper.

The question for consideration now is:  Did this
power, conferred on her, convert her estate, previously
spoken of as a life estate, into a fee simple?   There are
some authorities, which give countenance to such a con-
struction, and it was considered by the circuit judge,
that this power converted her estate, previously called
a life estate, into a fee simple.   But reason and the over-
whelming weight of authority are opposed to such con-
struction.

It is true, that where by a will a devise is made in-
definitely, that is, without any expression of what estate
therein is given, and an unlimited power of disposition is
given the devisee, he would take a fee simple.   The sim-
ple indefinite devise would carry by the common law
only a life estate, unless an intention to pass a greater
estate in some way appeared.   But that an estate, given
in indefinite terms, was intended by the testator to be a
fee simple, could always be shown by any other portions
of the will; and since January 1, 1777, in Virginia such
indefinite devise by statute is interpreted, without any
explanation, to carry the fee simple.

The reason, why such an indefinite devise with an un-
limited power of disposition by the devisee was con-
strued to be a fee simple, was, that this general power of
disposition was considered as evincing sufficiently the

1878
June Term.

Milhollen's
adm'r
v.
Rice *et al.*

testator's purpose, to pass to the devisee more of owner-ship, than a mere life estate would carry with it. The testator having failed to state in his will expressly, what estate he intended to pass, the common law implied, that he intended to pass a life estate ; but if the testator gave to the devisee an unlimited power of disposition, a power belonging only to fee simple estate, the court considered, that he thereby interpreted the indefinite devise ; and they then construed the will to pass a fee simple. See New. Benl, 11 fol. 9 ; Amr. 24 Hen. 8; Co. Litt. 9 b, where the devise was indefinite, and the power to give or to sell, to whom he will: also Bac. Abr. tit. Devise ¶ 39; Anon. 7 Edw. 6, where the devise was to one to give, sell or do therewith at his will and pleasure : *Sutton* v. *Robertson*, Moore 57 n. 162, where the devise was to the testator's wife, to dispose and employ the same on her and her son, at her will and pleasure: *Timewell* v. *Perkins*, 2 Atk. 103, where the devise was to the testatrix's daughter for her own use, to give away at her death, to whom she pleases.

It is also true, that in *Goodtitle* v. *Otway*, 2 Wils. Ch., as reported, the court is represented as deciding, that a devise to one for life, with power to the devisee to dispose thereof at her will and pleasure, gave to the devisee a fee simple. But it should be observed, that the case is badly reported, that portions of the opinion of the court, and the remarks of Gundry, Judge, are contradictory and unintelligible. The devisee too was in that case the heir at law, and as the court well says, the land descend-ed to her as such ; and this being the case, it was entire-ly unnecessary for the court to have gone further in de-ciding, that the estate belonged to her in fee simple. Their decision is obviously right on this ground ; and it was unnecessary for them to go further and construe the will, as they did. Had the devisee not been the heir, the court would have had necessarily to construe the will. As it is, their expression of opinion can be regarded, as of but little more weight than an *obiter dictum*. To sus-

1878.
June Term.

Millhollen's
adm'r
v.
Rice et al.

tain this opinion, the court relies on *Jennor & Hardis's Case*. 1 Leon. 283. But the examination of that case shows; that the devise was not one for life, with power to dispose at her pleasure, but was to one indefinitely with power to dispose thereof at pleasure. It was therefore in entire accord with the cases I have before cited, and does not sustain the decision in *Goodtitle* v. *Otway*, 2 Will. 6.

In rendering their opinion in this case the court admit, that a contrary decision was rendered in *Anon*. 3 Leon. 71 and 4 Leon. 41. They say however, that this case was overruled by *Jennor & Hardis's Case*, 1 Leon. 283; which was subsequently decided. This, we have seen, is a mistake. The case in 3 Leon. 71, was a devise expressly for life, with a power to devise, to whom the devisee chose; and the court held, that the devisee had but a life estate. And the case in 1 Leon. 283, did not, as we have seen, conflict with this decision. The decision in *Goodtitle* v. *Otway*, 2 Wils. 6, was not only in conflict with the *Anon. Case* in 3 Leon. 71, but also in conflict with other cases. See *Liefe* v. *Saltington*, 1 Freeman 149, 163, 176; 1 Mod. 189; *Tomilson* v. *Dighton*, 1 P. Wms. 149; 1 Salk. 189; 10 Mod. 31, 71.

Whatever doubt may have been produced by this decision of *Goodtitle* v. *Otway*, there would seem now to be no doubt, that if when a devise or bequest expressly gives a life estate, a superadded power of disposition will not enlarge the life estate into a fee simple, or make the property bequeathed absolute. It has been so decided in numerous English and American cases. See *Nannock* v. *Horton*, 7 Ves. Jr. 391; *Reid* v. *Shergold*, 10 Ves. Jr. 370; *Doe* v. *Thorley*, 10 East 438; *Reith* v. *Seymour*, 4 Russ. 263; *Archibald* v. *Wright*, 9 Sim. 161; *Fairman* v. *Beal*, 14 Ill. 244; *Dunning* v. *Vandusen*, 47 Ind. 423; *Henderson* v. *Vaulk*, 10 Yerg. 30; *Denson* v. *Mitchell*, 26 Ala. 360; *Freeman* v. *Okey*, 3 Jones Eq. 473; *Porter* v. *Thomas*, 23 Ga. 467, 471; *Hollingshead* v. *Alston*, 13 Ga. 277; *Andrew* v. *Brunsfield*, 32 Miss. 107; *Johnson* v.

*Coleman,* 2 Johns. 291 ; *Rail* v. *Dotson,* 14 Smed. & M. 176; *Dean* v. *Nunnally,* 36 Miss. 358, 364; *Bryant* v. *Christian.* 58 Mo. 98 ; *Hazel* v. *Hager,* 47 Mo. 277 ; *Green* v.*Sutton,* 50 Mo. 186 ; *Jackson* v. *Hussey,* 41 Mo. 495, 498; *Scott* v.*Burt,* 9 Rich. Eq. 358 ; *Aaron* v. *Beck,* 9 Rich. Eq. 411; *Pulliam* v. *Boyd,* 2 Strob. Eq. 141 ; *Flintham's Appeal,* 11 Serg. & R. 16 ; *Borden* v. *Downey,* 35 N. J. (6 Vroom) 74 ; *Downey* v. *Borden,* 36 N. J. (7 Vroom) 460 ; *Burleigh* v. *Clough,* 52 N. H. 267.

There are a few cases, which have been cited, as not in accord with the views expressed, or law decided in these numerous cases ; but a closer examination of them will show, that their inconsistency with these cases is more apparent than real.

Thus in the cases of *Irwin* v. *Farrer,* 19 Ves. 86, the power, conferred on the life tenant, really amounted to a power, to consume the principal; and in accordance with the views, I have before expressed, it was properly held, that the legatee had an absolute interest, and not a mere life estate.

The case of *Holloway* v. *Clarkson,* 2 How. 521, though it might seem inconsistent with the views I have expressed, is not really so. This will be apparent, when we read the explanation of that case, and the case of *Irwin* v. *Farrer,* 19 Ves. 86, and of *Barford* v. *Street,* 16 Ves. 135, as given by Vice Chancellor Turner, in *Hughes* v. *Wells,* 9 How. 768.

In the case of *Barford* v. *Street,* 16 Ves. 135, Sir William Grant said : "that an estate for life with the unqualified power of appointing the inheritance comprehends everything." This, standing alone, certainly seems inconsistent with the views, I have expressed; but taken in its connection, as uttered in that case, it really is not, as is shown by Vice Chancellor Turner, in *Hughes* v. *Wells,* 9 How. 768, also 13 Eng L. & E. Rep. 389, 397.

In the case of *Beachcroft et al.* v. *Broome,* 4 T. R. 441, Lord Kenyon decided, that under a devise to A.

and his heirs, but if he dies without selling or disposing of the same, or without issue, then over, A may settle the estate in his lifetime, and defeat the limitation over. But as his opinion shows, this decision proceeded, not on the ground that the life tenant had a fee simple, but on the ground that he had a power to settle the estate, which power he had exercised. Judge Green in a dissenting opinion in *Madden* v. *Madden's ex'rs*, 2 Leigh 380, denied (with some qualifications) that there was an established distinction between a case of a gift for life, with a power of disposition added, and a gift to one indefinitely, with a superadded power to dispose by deed or will. He was apparently misled by the cases of *Goodtitle* v. *Otway*, 2 Wils. 6; *Beachcraft* v. *Broome*, 4 T. R. 441; *Barford* v. *Street*, 16 Ves. 135; *Irwin* v. *Farrer*, 19 Ves. 86, which are the only cases he cites to sustain his view.

All these cases we have examined and commented on. Judge Green seems however to have entertained this view but a brief time. He concurred in the decision in *Burwell's ex'rs* v. *Anderson's adm'r &c.*, 3 Leigh 356, decided shortly afterwards.

Judge Tucker, in delivering the opinion of the court in that case, says: "A devise to A, to dispose of at his will and pleasure, gives a fee simple; but a devise to a wife for life, and after her decease she to give the same to whom she will, passes but a life estate with a power. When such inconsistent life estate is given, the fee does not pass; for the whole matter rests upon intention."

I conclude therefore, as stated by Sir William Grant in *Bradley* v. *Wescott*, 13 Ves. 453, and by Chancellor Kent in *Jackson* v. *Robbins*, 16 Johns. 588, that the distinction, on which I have been insisting, is perfectly established; and that a devise or gift to A and such persons, as he shall appoint, is a fee simple, or absolute property in A without an appointment; but if it is to him for life, and an unlimited power of appointment is

superadded, he has but a life estate. And if the super-

added power was, to appoint a specified class of persons, it would *a fortiori* not enlarge his express life estate to a fee simple, or absolute property.

While the rule in *Shelley's case* was in full operation, there was one exception to the rule. If the devise or bequest was to A, for life, with the superadded power of appointing to A's heirs in fee simple or absolute property, the life estate of A would be enlarged into a fee simple, or absolute property, though the power was never executed by A. If in such a case A executed the power, and appointed the estate to his own heirs, the rule in *Shelley's case* would immediately apply. and A's life estate would become a fee simple, or absolute property. And the same result would follow, if the estate had been devised or bequeathed to A for life, with power to B, to appoint the estate in fee simple, or absolute property, to A's heirs, and such power was executed by B, when so executed, A's life estate, by the rule in *Shelley's case*, would at once become a fee simple in A; and his heirs would get nothing by such appointment.

By the rule in Shelley's case, whenever the ancestor, by any gift or conveyance, takes an *estate of freehold* in lands or tenements, and in the *same gift or conveyance* an estate is afterwards limited, by way of remainder, to *his heirs*, the word heirs are words of *limitation* of the estate, carrying the inheritance to the ancestor, and not words of *purchase,* creating a contingent remainder in the heirs. 2 T. Co. Litt. 144 ; Fearne Rem. 29, 28, n (1) ; *Shelley's case,* 1 Co. 194 a. 106 b n (I. 5); Thomas's ed. Minor's Institutes, vol. 2 pp. 341, 342.

The ancestor by this rule must take the estate of freehold, by or in consequence of the *same assurance,* which contains the limitation to his heirs. But this require-ment is satisfied, if the limitation to the ancestor, and to the heirs, be parts of the *same transaction,* although con-tained in several instruments, as a deed, or will, *creating a power* and an *appointment* exercising the power.

*Shelley's case*, 1 Co. 106 b. n (I. 5) ; Thomas ed. Minor's Institutes, vol. 2, p. 342.

If therefore in the cases supposed, it is the person, who by will was given the appointing power, A or B as the case may be, exercises this power by appointing the inheritance or absolute property to A's heirs, it operates precisely as if by the will a life estate had been given to A, remainder in fee or absolute property to A's heirs; and the rule in *Shelley's case* therefore applying, the estate of A at once becomes a fee simple, if the gift was real property; or absolute property, if the gift was personal property, for the rule in *Shelley's case* is applied by analogy to personal property. Fearn Rem. 492 *et seq.* & n (a) ; 3 Lom. Dig. 339 ; Minor's Institutes, vol. 2, p. 348.

When the life estate is by the will given to A, and a power conferred on him thereby to appoint the estate to his heirs in fee simple or absolute property, then, though A. does not exercise the power, his life estate will, by reason of the giving of such power, be enlarged into a fee simple or absolute property. For if A failed to exercise the power of appointment, as the subject of the testator's bounty, the real or personal estate, as the case may be, and the object of his bounty, A's heirs, are both certain, the power would be regarded by the courts as imperative ; and A's heirs would be held by the court as in the same situation, as though the will had devised or bequeathed the remainder after the life estate to them.

This I hold to be the law, as I will presently endeavor to show, though the authorities are conflicting. If this be the law, and on the failure of A to exercise the power of appointment, the will is construed, as though the testator gave A an estate for life, remainder in fee simple or absolute property to his heirs, of course the rule in *Shelley's case*, when in full operation, would have applied; and A would have a fee simple estate or absolute property. But even if the will, under the law, was not to be so construed, still A must be regarded as holding a

fee simple estate or absolute property. For we have seen, by exercising the power conferred on him, and appointing his heirs, the devisee or legatee would have a fee simple estate or absolute property; and his life estate, by the operation of the rule in *Shelley's case* would enlarge to a fee simple; and he could consume, or sell, or give it away; and the will having thus indirectly conferred on him these powers, we have seen, that it must be construed as giving him a fee simple or absolute property, though he be thereby expressly given only a life estate.

Thus in *Schermer* v. *Schermer's ex'r.*, 1 Wash. 266, the will gave to the testator's wife the use and profits of his whole estate, both real and personal, during her natural life; and after that was ended, his will and desire was, that the whole of his estate be equally divided betwixt, whomsoever his wife should think proper to make her heir or heirs, and the testator's brother. The wife died without executing this power, and the court held, she took a fee simple in this moiety of the land, which descended to her heir at law. The decision of the court below was rendered by Chancellor Wythe. His opinion in the case may be found in *Shermer* v. *Richardson ex'r &c.*, Wythe's Chancery Reports (Minor's ed.) 159. He construed this will, as giving the power to appoint the inheritance by making an heir, that is a devisee, or by appointing her legal heir, to the inheritance, which she did by dying intestate. He shows, that an indefinite devise to her, with a general power of appointment, would, as we have shown, give her a fee simple estate or absolute property; and he answers the difficulty, arising from the testator having given her expressly a life estate, instead of an indefinite estate, thus: "When an estate for life is given to one, and afterwards in the same conveyance the estate is given to the heirs of the donee, the donee takes the inheritance immediately, Coke's Institutes, vol. 1, fol. 22 b; and by like reason, when an estate for life is devised to one, and afterwards in the same

67

1878
June Term.

Milhollen's
adm'r
v.
Rice *et al.*

testament the donee is empowered to make an heir of the estate, the donee takes the inheritance immediately."

It is obvious from this, that he held, that the devisee in this case had a fee simple, because if he had executed the power by devising the land to his own heirs, the rule in *Shelley's case* would have applied, and the devisee would under that rule have had a fee simple: his reasoning being substantially the same as mine, except that it is less elaborate.

He assigns as another reason, that by his interpretation of the will an express life estate was not given by the will to the one moiety of the land, over which she was given a power of appointment. It seems to me, that it can be shown, that the Court of Appeals in affirming his decision based their affirmance on the first of his reasons given above, that is, because if she had appointed the estate to her heirs by will, the rule in *Shelley's case* would have applied. President Pendleton closed the opinion of the Court of Appeals thus: "his words have been critically scanned, he does not give her a power to *dispose*, but to name the *person* or *persons*, she might choose to succeed to her part, to whom the testator gives the money. And it is doing small violence to the words, even in their technical meaning, to say, that by *suffering* her legal representatives to succeed her, she has actually made them her heir or heirs, as much so as if she had pointed them out by an express devise."

In other words President Pendleton regards the devisee, as having executed the power in the same manner, as if she had devised the estate to her heirs; and then, as Chancellor Wythe had shown, the rule in *Shelley's case* would have applied, and her life estate would have been enlarged to a fee simple.

That this was the true ground, on which the *court* decided that case, is, I think, rendered apparent, by what Judge Lyons, who sat in that case, says of it in *Robinson's adm'r* v. *Brock*, 1 H. & M. 233. He says: "In

that case the wife, who survived, held an *estate for life* under her husband's will with *remainder*, to whom she should think proper to make her heirs, which gave her a fee or absolute property, in the same manner as if devised to her and her heirs; and of course her own relations took the estate." It is obvious from this, that he regarded the rule in *Shelley's case*, as applying in the case of *Shermer* v. *Shermer's ex'r.*, 1 Wash. 266.

In the case of *Goodwin* v. *Taylor*, 4 Call 305, same case, 2 Wash. 74, the testator bequeathed the interest on £4,000 in government funds to his four grandchildren; and at their decease the principal and interest to be disposed of by them to their heirs, in such proportion, as they by their wills respectively direct. The court basing its decision on *Shermer* v. *Shermer's ex'r* 1 Wash. 266, held, that a granddaughter took, not a life estate, but an absolute property, in this one-fourth of this £4,000, she having died intestate. Upon her death she must be regarded by her intestacy, as having disposed of the property to her heirs, under the power conferred on her by the will; and then it was the same, as if the will had given her a life estate, remainder to her heirs; and under the rule in *Shelley's case* she took an absolute property, and not a mere life estate.

In *Burwell* v. *Anderson*, 3 Leigh 359, Judge Tucker in delivering the opinion of the court referred to *Shermer* v. *Shermer's ex'r*, 1 Wash. 266, as an instance of the liberality, with which the courts in modern times acted in dispensing with the literal execution of powers. He evidently regarded the court as deciding that case upon the grounds, which I have assigned for its decision.

Judge Allen, in delivering the opinion of the court in *Moore et al.* v. *Brooks*, 12 Gratt. 151, refers to this case of *Goodwin* v. *Taylor*, 2 Wash. 74, as an instance of the application of the rule in *Shelley's case*. It is therefore clear, that these two cases of *Shermer* v. *Shermer's ex'r*, 1 Wash. 266, and *Goodwin* v. *Taylor*, 2 Wash.

74, 4 Call 305, were both decided, as they were, on this reasoning : if the powers conferred on the devisee had been executed, by devising or bequeathing the property to the heirs of the devisee or legatee (their suffering themselves to die intestate being regarded as the equivalent of this execution of the powers) then, as a life estate would be regarded as given to the devisee or legatee, and a remainder to the heirs by the testator's will, and the rule in *Shelley's case* applying, the life estate given by the will became a fee simple estate or an absolute property.

The judge of the circuit court in his opinion regards the case, under consideration, as being ruled by the decision in *Shermer* v. *Shermer*, 1 Wash. 266. Whether this conclusion be correct, must depend on the answer to the question : If the devisee, the testator's wife, had executed the power conferred on her, and given one-half of the proceeds of the sale of the real estate, to which her power extended, to her heirs, would the rule in *Shelley's case* have applied? If so, she took under the will a fee simple in this moiety of the land; and otherwise she took only a life estate.

The will in this case differs from the will in *Shermer* v. *Shermer's ex'r*, 1 Wash. 266, in this, that in the case now before us the devisee for life is given the power to appoint, as the recipient of the testator's bounty, not whomsoever she pleased, but "whom she thinks proper *of* her heirs." The testator in this case only means, that she may appoint any one or more of her legal heirs. Her selection is limited to that class; she may select *among* them. This is the import of the word *of* in the portion of the will above quoted. She could not in executing this power go out of this class, *her legal heirs.*

On the contrary by the will in the case of *Shermer* v. *Shermer's ex'r*, 1 Wash. 266, the power given to the devisee was : to appoint *whomsoever* she thought proper to *make* her heir or heirs," which, the court properly held, gave her the power to devise the land, to whomso-

ever she pleased, and did not limit her appointment to her *legal heirs.*

The decision however was not, if I am right in my view, of this case, at all dependant upon this difference. I do not understand, as counsel contend, that the court held, either in this case, or in the case of *Goodwin* v. *Taylor,* 4 Call 305, that a life estate, with superadded power of unlimited disposition, would be held for that reason to be a fee simple. We have seen, that the overwhelming weight of authority, both English and American, is opposed to such conclusion.

In addition, to what I have said, I may add, that the reference by Judge Tucker, to the case of *Shermer* v. *Shermer's ex'r,* 1 Wash. 266, in delivering the opinion in the case of *Burwell* v. *Anderson,* 3 Leigh 348, shows, he did not understand the case of *Shermer* v. *Shermer's ex'r,* as laying down the law on this subject differently from what had been done in these English and American cases ; for while he heartily approves of them, he makes no comment on *Shermer* v. *Shermer's ex'r,* as differing from them.

The will in the case of *Shermer* v. *Shermer's ex'r,* 1 Wash. 266, differs from the will in the case before us in another very important particular. That will, after giving his wife a life estate, provided, that his property real and personal should be equally divided in kind between the testator's brothers "and whomsoever his wife should think proper to make her heir or heirs" ; and it further directed, that his brothers, as soon as the crops were finished, after his wife's death, should sell and dispose of his whole estate, real and personal, as they should think most conducive to the receiver's benefit."

In the case before us the will provides, that "at his wife's death all the testator's lands are to be sold, and one-half of the money arising from the sale is to go to his lawful heirs, and the other half to go at her disposal, to whom she thinks proper of her heirs." The authori-

ties show clearly, that under this will no estate in the testator's land was conferred on the executor, but only a power to sell. Where a testator devises land to his executors to sell, the executors take a fee simple estate in the lands. But where a testator devises, that his executor shall sell his land, or that his lands shall be sold by his executor, or if he devises his lands to be sold by his executor, no estate is thereby conferred on the executor; but he has merely a power to sell. See *Mosby's adm'r et al.* v. *Mosby's adm'r*, 9 Gratt. 584; *Campbell* v. *Johnston*, 1 Sandf. 148; *Jameson* v. *Smith's ex'r*, 4 Bibb 307.

Upon the death of his wife therefore, the fee simple in the whole of William Milhollen's land descended to his heirs; and if his wife had disposed of a moiety of the proceeds of his lands to her heirs, the fee simple in the whole of his lands would have still so descended; and her heirs would have had no estate whatever in his lands, but only the right to a moiety of the proceeds of the lands, when sold by William Milhollen's personal representative, under the power impliedly conferred on him, to make sale of these lands.

Now it has long been settled, that in order that the rule in *Shelley's case* may apply, where the ancestor has a legal estate of freehold, as in this case, her heirs must have a legal remainder in fee simple. It is not sufficient, that they have some interest in the land, or even that they have an equitable estate in fee simple. They must have a legal estate in fee simple. Unless they have in such a case a legal fee simple, they must take as *purchasers*, and not by descent. See *Tippin* v. *Coson*, 4 Mod. Rep. 380; *Silvester on demise of Law* v. *Wilson*, 2 T. R. 444; *Venables et ux.* v. *Morris & Edwards*, 7 T. R. 342; Minor's Institutes, vol. 2, p. 342.

As therefore the life tenant, by executing the power conferred on her, could not have invested her heirs with a legal estate in fee simple, she could not, by any act of hers, have brought the rule in *Shelley's case* into opera-

tion, so as to enlarge her express life estate into a fee simple. But not so in the case of *Schermer* v. *Schermer's ex'r*, 1 Wash. 266; for in that case, if the life tenant, who held a legal estate, had executed the power conferred on her (and she was regarded as having done so) she could have conferred on her heirs an estate in remainder in the land, for she was authorized to dispose of the lands themselves; and this estate would have been a legal estate in fee simple; and therefore the rule in *Shelley's case* would have applied; and it was accordingly held, that she had a fee simple estate.

It is contended however, that as the will in that case provided, that the executors should, sometime after the rule in *Shelley's case* had been brought into operation by her death, sell the land, this direction operated an equitable conversion of the land into money; and that a court of equity regards this conversion, as having taken place at the death of the testator. See *Fairley* v. *Kline*, Pen. (N. J.) 754; *Reading* v. *Blackwell*, Baldw. 166; *Rinehart* v. *Harrison's ex'r*, Baldw. 177; *Loftes* v. *Glass*, 15 Ark. 680; therefore this case becomes identical with the case now before us.

But I cannot see, that this clause in the will, in the case of *Schermer* v. *Schermer's ex'r*, could have any effect on the construction of that will. This conversion of land into money has no legal effect whatever; it is a mere doctrine of a court of equity, depending entirely on intention. While the rule in *Shelley's case*, where it applies is entirely independent of intention. If lands are devised to one for life, remainder in fee simple to the life tenant's heirs *as such*, the rule in *Shelley's case* will be applied, no matter how clearly the will may show, that the testator intended to give to the ancestor no more than a life estate. Such intention in such case was regarded by the courts to be in violation of public policy; and the courts therefore refused to carry out the testator's clear purpose.

In almost every case, where the rule in *Shelley's case*,

has been applied, it violated the intention of the testator, to give the ancestor no more than a life estate. See *Taylor* v. *Clary, et al.*, 29 Gratt. 448. If the case was brought within the rule in *Shelley's case*, it has been always inflexibly applied, though in so doing the testator's intention, to give but a life estate to the ancestor, was ever so clearly violated. The case of *Schermer* v. *Schermer's ex'r* was, as we have seen, within the rule; and being so, it would have been applied, though the court had seen, that in so doing it violated the testator's intention to give but a life estate to the ancestor, deduced from the power given to the executor to sell the lands, or shown in any other manner.

But the case before us not falling within the rule in *Shelley's case*, the court is at liberty to, and must, regard the testator's intention in determining, whether Mrs. Rice took a fee simple or a life estate under her former husband's will. My conclusion is, that she took but a life estate in these lands.

The next enquiry is: What interest, if any, had Mrs. Rice, under her former husband's will in the one-half of the proceeds of his lands? In *Robinson* v. *Dusgate*, 2 Vern. 181, where A, by will devised his lands to B in fee, he paying therefor £400, whereof £200 was to be at the disposal of his wife by will, *to whom* she shall think proper to give it; and she died intestate; the court decided, that her administrator should have the £200, the property thereof being absolutely vested in her.

But in *Hanson* v. *Miller*, 14 Sim. 27, the Vice Chancellor said: "if the case of *Robinson* v. *Dusgate*, is correctly reported, I must say, it would require a great deal of argument to satisfy me, it was rightly decided." The court however in *Muskelyne* v. *Muskelyne*, 2 Amb. 750, cited *Robinson* v. *Dusgate*, approvingly, though that case differed from it materially.

In *Whiskon & Claytor's case*, 1 Leon. 156, the court held, that if I will, that my lands be at the disposition

of J. S., by these words J. S. has a fee simple; and that there is no difference, where the devise is, that J. S. shall do with the land at his discretion, and where the devise is, thereof to J. S. to do with it at his discretion.

This case seems scarcely reconcilable with the cases before cited, which held, that a devise of lands to an executor, to sell, gives a fee simple estate in the land, while a devise of my lands, to be sold by my executors, passes no estate in the land, but confers only a power. But be this as it may, it has been decided in Virginia, that a bequest of personalty, not to another, but to be at the absolute disposal of another, gives to that other ownership of it as his absolute property.

In the case of *Burwell* v. *Anderson's adm'r &c.*, 3 Leigh 348, the testator, after directing the sale of certain real and personal property to pay debts, and after giving all the residue of his estate real and personal to his wife *for life*, directs, that at her death all his estate real and personal shall be turned into money, to be distributed as follows: first he devises, that his wife b*y will* or *otherwise* may have the *absolute* disposal of £500; and then he bequeaths the balance of the proceeds of sale to certain parties, specifying them. The court held, that the wife took by this will the *absolute property* in this £500, and not a mere *power* to dispose of that sum. Judge Tucker, in delivering the opinion of the court says:

"From the earliest times it has been among the received doctrines of the common law, that an absolute and unqualified power of disposing, conferred *by will*, and not controlled or explained by any other provision, should be construed as a gift of the absolute property. In this the law but corresponds with the dictates of common sense. Every man of ordinary capacity would understand a *power to dispose of a thing as he pleased*, as a gift of the thing itself; and hence every one, who uses the phrase without qualification, is understood by the law as intending a *gift*. The power of *absolute disposition* is indeed the eminent quality of *absolute property*. He,

who has the *absolute property*, has inseparably the absolute power over it; and he, to whom is given the absolute power over an estate, acquires thereby the absolute property; unless there is something in the gift, which negatives and overthrows this otherwise irresistible conclusion.

"Thus a devise to A, to dispose of at his will and pleasure, gives a fee; and a devise, to dispose of for payment of debts, or to give, sell, or do therewith at pleasure, is held to give an absolute estate, even in lands. 4 Com. Dig. 161. So a devise, to be at the discretion of a person *without any express disposition* to him, otherwise than to declare, that the lands are to be at his discretion, gives a fee. So, that a person (tenant in tail under another devise) shall have power to dispose at his will and pleasure; so too, that the executor shall sell or levy a fine, or make assessment, or grant a rent in fee. 2 Preston on Estates, 74, 75.

" So though a devise to a wife *for life*, and after her decease, she to give the same to whom she will, passess but an estate *for life* with a power; yet *if an express estate for life had not* been devised to the wife, an *estate in fee* would have passed by the other words. 8 Vin. Abr. Devise, W. a., ¶ 4, p. 234. When indeed such an inconsistent *life estate* is given, the fee does not pass; for this whole matter rests upon intention. The estate being the testator's to give, *his will* is the law of the subject, unless that will be against the law of the land.

" When therefore there is an *absolute power of disposition*, without any other bequest to the party, except what these words themselves imply, they operate to convey *property*, and not *power* only. And where an interest is given generally, and without limitations, the gift is not converted into a mere power by annexing thereto a *general power* of disposition. Looking at this case upon these principles, I cannot doubt, that this will conveyed not a mere *power* but an *interest* also. A life interest had indeed been given to some estate *in specie;* but that

1878
June Term.

Milhollen's
adm'r
v.
Rice *et al.*

interest is altogether severed from the subsequent appropriation of the proceeds of sale, by the power to the executor to sell and distribute. This was forcibly illustrated by the counsel for the appellee himself. So that as to the £500 it is a devise, to be at the absolute disposal of the wife by will or otherwise, as she pleased, without any other disposition to her by name, than what is implied by these words; there is no life estate in the £500 to control their operation; and, therefore, they have the established effect of passing an absolute right."

I have quoted thus largely from the opinion of the court in that case, in order that the grounds of this decision might be distinctly understood, as in the opinion of the circuit court if Mrs. Rice did not, under the decision of *Schermer* v. *Schermer's ex'r,* have a fee simple, she had by this decision in *Burwell* v. *Anderson's adm'r,* 3 Leigh 348, an absolute property in one-half of the proceeds of the sale of the testator's land.

An important difference between this case and the one before us should be noted. In that case the wife was to have the absolute disposal of a small portion of the moneys, arising from converting into money all the testator's estate, real and personal. The fund, out of which the £500, which she had the absolute right to dispose of, as she pleased, was not the proceeds of the sale of the whole property, he had devised to her specifically, nor was the portion, she had this absolute right to dispose of, to arise specifically from the specific property given to his wife for life, but it was to arise from turning into money all the testator's estate both real and personal.

In that case the court might well hold, that though a life estate had been given in *some* estate *in specie,* yet that interest was altogether distinct from the fund, arising from converting, after his death, all his property real and personal into money, and therefore from the £500, a portion of this general fund.

In the case before us the fund, which the wife had a power to dispose of among her legal heirs, (not a general

power to dispose of as she pleased as in that case,) was the *entire* proceeds of the sale of the whole of the identical property, and none other, which he had specifically given to his wife for life. In this case it seems to me to be impossible to say, that this fund, so arising, was altogether distinct from the property, in which she had been given a life estate. On the contrary, it seems to me, it was the same property. In the view of a court of equity it must be considered as the same property identically; for though its form had been directed to be changed, yet in the view of a court of equity its identity was not thereby lost.

On the contrary, from the authorities heretofore cited, it appears, that before the sale, (and indeed before her death) a court of equity regarded the remainder in the property, in which she had a life estate, as money. The sale directed by the will was, before it was made, regarded by a court of equity, as though it had been made.

There was then, in the view of a court of equity, no change made in the property of William Milhollen by the sale, directed to be made after his wife's death. The land before the sale was regarded as identical with the proceeds of the sale, after it was made; and therefore the property, she was empowered in a qualified manner to dispose of, was the identical property, in the view of a court of equity, in which she had been given a life estate; and therefore by the reasoning in *Burwell* v. *Anderson's adm'r*, 3 Leigh 348, her express life estate was not enlarged to an absolute property. But even if the proceeds of the sale, which Mrs. Rice was given a limited power to dispose of, had arisen from some other source than the sale of the identical property, in which she had a life estate, still this case would have differed entirely from that case.

The whole reasoning of Judge Tucker, in delivering the opinion of the court, shows, that she could not be regarded as having an absolute property in the moiety

proceeds of the sale of the real estate, unless she had an absolute and unqualified power to dispose of the same, and no express estate had been given to her. In that case the devisee clearly had this absolute power of disposing of the £500 in any manner and to any person she pleased. In our case she had no such power. It was at her disposal, *to whom of her heirs* she pleased. Not at her absolute disposal.

1878.
June Term.

Milhollen's
adm'r
v.
Rice *et al.*

It is true, that in *Goodwin* v. *Taylor*, 4 Call 305, where the will bequeathed the interest upon £4,000 to four grandchildren, and at their decease the principal and interest to be disposed of by them to their heirs, in such proportion as they by their wills respectively direct, the court in concluding their opinion do say: "A power to a tenant for life, to make heirs, is the same as a power, to dispose to of his heirs. In both the meaning is, the heirs, whom he shall appoint or the law create." But in that case the power was not, to dispose of to his heirs, but to dispose of to their heirs in such proportion as they may direct. Which seems to me, to be essentially different, though this difference does not seem to have attracted the attention of the court in that case. In truth this language seems to have been thrown in by the court at the close of its opinion without much consideration.

It really made no difference in that case, whether the word heir included devisees or not. The case must have been decided in the same way, whether these words were so construed or not. It was decided, as it was, because, as we have seen, the case was held to come within the rule in *Shelley's case*; and not because the testator intended to give more than a life estate to the devisee. And from what we have heretofore said, the rule in *Shelley's case* would have applied to it just as certainly, had the power to dispose of to their heirs been interpreted to mean legal heirs, as when interpreted to mean them and also devisees. I regard the expression by the court of its opinion on this subject, as a mere *obiter dictum*.

That it ought to have no weight, is further shown, by what is said on this subject in *Wilkins* v. *Taylor*, 5 Call 157, by President Lyons, who was one of the court in *Goodwin* v. *Taylor*, ex'r, 4 Call 305. Speaking of this same will he says: "the devise is of one-fourth of the interest to each of the daughters for life, with power to dispose of the principal and interest at their deaths among their respective heirs; which, if the testator meant heirs general, necessarily gave the whole property to each daughter in her own fourth; for a power to give to one's heirs is ownership in effect; and comes to the same thing, if he meant heirs of his body; because that would have created an estate tail in lands, and consequently have given the absolute property in a personal thing."

From this it is obvious, that President Lyons thought, that the power in that will, to dispose of to their heirs, was a power to dispose of to their *legal heirs*, and not to any devisee the testator pleased. And this, it seems to me, was the true meaning of the will in that case. There can, in my judgment, be no doubt, that this was the meaning of the word "her heirs" used by William Milhollen in his will. His words were: "the other half of the moneys, arising from the sale, to be at her disposal, to whom she thinks proper *of her heirs*." To regard this as unlimited power to dispose of, to whom she thinks proper, we must reject entirely the words '*of her heirs;*' and no correct rule of construction would permit us to reject these important words. No meaning can be given them unless they are regarded as qualifying her absolute power of disposal.

The testator obviously meant, that she have the power to dispose of these proceeds among a *fixed* and definite class, to-wit, *her legal heirs*. Such is the usual and proper legal signification of the words; and no reason can be given for giving these words an unusual and arbitrary signification. If his meaning could be regarded as in any degree doubtful, it is made clear by the testa-

tor's own language, when he intended to give an absolute or unlimited power of disposal. When he bequeathed his personal estate, he intended to give such power; and his language is: "to use or dispose of at her discretion during her natural life, and also to have the right of disposal at her death." There is here no limitation of her power.

Compare this language with that used by him, as quoted above, with reference to the power to dispose of the proceeds of a portion of his real estate; and none can doubt, that he did not intend to give exactly the same power in both instances. She not having an absolute power of disposing of the proceeds of the real estate, she did not, according to the case of *Burwell* v. *Anderson's adm'r*, 3 Leigh 348, have any ownership in these proceeds.

The next enquiry is: Who, under the provisions of this will, has the ownership of one-half of the proceeds of lands left at the disposal of his wife, to whom she thought proper of her heirs? She not having disposed of them, did the testator die intestate as to them? If so, it would pass to his heirs, or, more properly speaking, distributees, as the direction to sell his lands was an equitable conversion of them into money. Or, did this moiety of the proceeds of this land under this will go to her heirs?

If she had a mere naked power to dispose of these proceeds of the sale, she having failed to execute this power, these proceeds must pass to his distributees, unless the court, according to the doctrine laid down, or intimated, in *Schermer* v. *Schermer's ex'rs*, 1 Wash. 266, should hold, that Mrs. Rice, by suffering herself to die intestate, would be regarded as having disposed of these proceeds to whomsoever was her legal heir or heirs, and 'thus constructively executed its powers.

If on the other hand this power, conferred on Mrs. Rice, by the will, to dispose of half the proceeds of the sale of the testator's land, to whom she thinks proper of

her heirs, should be construed as a power in the nature of a trust, then these proceeds must under the will go to her heir or heirs, as the objects of the testator's bounty, even though she never executed the power conferred on her, either actually or constructively. All the authorities agree that no power can ever be construed to be a power in the nature of a trust, unless there be a certain subject, on which the power is to act, and a certain object, in whose favor the power is to be exercised.

The only point of controversy is, whether, when there is this certain subject and certain object, there be anything else necessary, to convert a mere power into a power in the nature of a trust, and if so, what else is necessary? There is obviously here a certain subject, that is, one moiety of the proceeds of the sale of all the testator's lands; and if the construction I have given this will be correct, then the object is equally certain, that is, the heirs of the testator's wife.

All the authorities agree, that the fact, that the devisee, on whom the power is conferred, has a right to select, as objects of the testator's bounty, one or more, or give to all, of a certain fixed and determinate class, does not render the object uncertain, so as to prevent the court's holding the power to be a power in the nature of a trust.

If the court so holds, it will distribute the testator's bounty equally among all persons, belonging to the class designated in the will, wherever the person, who by the will was intrusted with such a power, has failed to execute the power; and the power conferred on such person an arbitrary right of selecting among such class at his pleasure. See *Harding* v. *Glynn, Brown* v. *Higgs*, 4 Ves. 708; 5 Ves. 495; 8 Ves. 561; 5 Myl. & Cr. 92; *Pierson* v. *Garnett*, 2 Bro. C. C. 38; *Dogley* v. *The Attorney General*, 2 Eq. Ca. Abr. 194; *Crossley* v. *Clan*, Amb. 397: 4 Vin. Abr. 485, 486; *Salusbury* v. *Denton*, 3 Kay & J. 529; *Crawys* v. *Coleman*, 9 Ves. 319; *Birch* v. *Wade*, 3 Ves. & Bea. 198; *Dominick* v. *Sayre*, 3 Sandf. 571.

The appellant's counsel however contends, that the objects of the testator's bounty, assuming that this would otherwise be a power in the nature of a trust, cannot be so held, because the words, "whom she thinks proper of her heirs," do not designate the objects of her bounty with sufficient certainty; and they rely, to sustain this position, on Judge Samuels's opinion in *Robinson* v. *Allen*, 11 Gratt. 790.

As I understand this opinion, it does not sustain this view of the appellant's counsel. The language used by Judge Samuels, is far from being clear. The language of the will was: "At the death of my husband I give all the lands, &c., to one or more of the children of Caroline A. Robinson, as he may designate; or authorize him to make such other disposition, as he may deem proper."

I understand Judge Samuels, as not questioning the law, as I have laid it down above, and as saying, that if the will had stopped at the word "designate," its meaning might be doubtful; but he bases his decision on the concluding clause, which authorized her husband to dispose of the property to any person, he pleased, as rendering the objects of the testator's bounty entirely uncertain; and therefore this could not be regarded as a power in the nature of a trust.

The decision has no application to the case before us; for we have seen, that the true interpretation of the will of William Milhollen, does not authorize his wife to dispose of this fund, to whomsoever she pleased, but only gives her the power to dispose of it, at her discretion, among her legal heirs. This is a perfectly defined class; and the objects of the testator's bounty are therefore entirely certain.

Is anything else essential, to require a power to be construed as a power in the nature of a trust, than that the subject and object of the power should be both certain? It seems, that in New York a statute law was passed, which declares, that every power is a power in

69

the nature of a trust, when the disposition, which it authorizes, is limited to be made to any person, or class of persons, other than the grantor of the power.

This statute is quoted in the opinion of the court by Duer in the case of *Dominick* v. *Sayre*, 3 Sandf. 559. Under it, all that is necessary to make any power a power in the nature of a trust, is, that the subject and object of the power be certain. Judge Duer states, that the notes of the revisors of the New York code show, that this provision of the statute law, recommended by them, was regarded as only declaratory of the common law. That case arose from a will of a testator who died before the statute was passed; and it was therefore governed by the common law; and hence Judge Duer deemed it necessary in that case to examine the whole subject; and his conclusion was, that this statute only declared what was law before its passage.

The appellant's counsel, in the case before us, seems to have overlooked this statement of Judge Duer, and erroneously concluded, that the decision in that case was controlled by this statute.

Francis Dominick by his will devised eight lots to his daughter Margaret, during her life, with power to give the same by deed, or will, to any of the male descendants of my family of the name of Dominick, and their heirs. This power was unexecuted, as to two of these lots; and the question submitted to the court was: whether this power implied a trust, the execution of which has devolved on the court. In other words, was the power merely discretionary, or must this power be construed, as imperative? If the exercise of the power rested in the mere discretion of the donee, she having failed to execute it, an absolute fee vested in the heirs of the testator. But if the power imposed a duty of execution, it should be regarded as imperative; and the court was bound to execute the power.

Judge Duer's introductory remarks, in delivering the opinion of the court, so nearly correspond with the con-

clusions I have drawn from my examination of the authorities, that I will here quote them:

"It is not to be denied, that the language of the court cited by the counsel" (and which has been cited in the cause before us) "favors very strongly the position, that words of mere authority or power are not sufficient to create a trust, unless the estate or interest of the donee of the property is commensurate with the power itself; and where the estate or interest is less extensive, as when a tenant for life is authorized to dispose of the fee, the power is not to be construed as imperative, unless other expressions or· provisions are to be found in the will, manifesting the intention of the testator that it should be executed, and therefore imposing the execution as a duty. But whatever support these positions may seem to derive from the earlier cases, (and it was upon these principally the counsel relied,) they are not only inconsistent with, but are distinctly refuted by, the latter decisions.

"In the earlier cases there is much confusion and uncertainty, as to the proper construction of powers similar to the present; and of this no more striking proof can be given than results from a comparison of the decisions of Lord Hardwicke in *Harding* v. *Glynn*, 1 Atk. 496, and the *Duke of Marlborough* v. *Lord Godolphin*, 2 Ves. 6: decisions which no effort of legal subtility, as both Lord Eldon and Lord Cotton have virtually confessed, has hitherto been able to reconcile."

The court in that case decided, that this was not a naked power, but a power in the nature of a trust, and that being unexecuted, all the male descendants of the name of Dominick, who were living at the death of the testator, were entitled to equal shares in these two lots, as the object of the trust.

In the case of *Pierson* v. *Garnett*, 2 Bro. C. C. 45, decided in 1786, Lord Kenyon, then Master of the Rolls, in his opinion first laid down a broad principle, which has since been a guiding star to his successors. He

says: "that where the property, to be given is certain, and the objects to whom it is given, are certain, then a trust is created;" and he well adds: "And it would be a lamentable case, if this court were to raise a distinction on slight words, as *peto, rogo, fidei tuæ commendo,* and such expressions of civil law; if the decisions of cases were to turn upon such grounds, property would be very vague."

This case was affirmed on appeal without hearing counsel; and Lord Thurlow said with reference to this rule laid down by Lord Kenyon. "I see no great reason to doubt the propriety of the rule, laid down by the master of the rolls. Where the object and person are both certain, the rule must be adhered to. Where the words *peto, rogo, opto, &c.,* occur, they make a designation of the object; and the property must be applied according to that designation.

The decision in this case is in itself unimportant, as these very strong expressions in the will manifesting the desire of the testator, that the power should be executed the words being: "it is my dying request that said Peter Pierson do dispose, &c." The case is only important for the sound rule, laid down by Lord Kenyon, and for his declining to place his decision on words so strong, that he might safely have done so from previous decisions; but he preferred to ground his decision on a more solid basis.

As I understand both Lord Kenyon and Lord Thurlow, they regard as of no value such words, as often occur in wills, such as, "desire," "will and devise," "request," "wish and request," "entreat," "recommend," "hope," "in the fullest confidence," "not doubting," "trusting and wholly confiding," and the like, where there is sufficient certainty in the object and subject. To determine that in a particular case a given power was to be construed as a power coupled with a trust, basing the decision on the use by the testator of any such words, was regarded as indeed lamentable by Lord Kenyon, the

proper basis of such a decision being only that the objects and subjects were both certain.

If the power is positive, and the subject of it is certain, and it is limited in its execution to a class, specified with certainty by the testator, is not the inference to be drawn therefrom, that the testator desires the power, he has thus given, should be executed? Would this inference be really strengthened by the use of many of the words of the character above referred to? Yet all of the words above quoted have been considered sufficient to create a trust, when there was certainty of object and subject. See *Moggridge* v. *Thackwell*, 7 Ves. Jr. 36; *Estes* v. *England*, 2 Vern. 466; *Nowlan* v. *Neillgan*, 1 Bro. C. 6, 489; *Foley* v. *Parry*, 2 Myl. & K. 138; *Prevost* v. *Clark*, 2 Madd. 581; *Malvin* v. *Kneightty*, 2 Ves. Jr. 333; *Harland* v. *Twigg*, 1 Bro. C. C. 144; *Wright* v. *Atkins*, 1 Ves. & Bea. 313; *Massey* v. *Sherman*, Amb. 520; *Wood* v. *Cox*, 1 Keen 317.

In the leading case of *Harding* v. *Glynne*, 1 Atk. 469, the will gave a leasehold and personal property to the testator's wife, but "did desire her, at or before her death, to give the same unto and among such of his own relations as, she should think most deserving and approve of." Such of the property as was not disposed of by the execution of this power, it was decided, ought to be equally divided among such of the relations of the testator as were his next of kin at the time of the death of his wife. It would, as Lord Kenyon says in *Pierson* v. *Garnett*, 3 Bro. C. C. 48, be lamentable if such a decision was to be upheld, because the testator used the words "I do desire" her to give. Had he said "I empower her to give, &c.," it seems to me the decision should have been the same; for why empower, if he did not desire her to execute the power?

This case is contradicted by the case of *Duke of Marlborough* v. *Godolphin* 2. Ves. 61. But it has been since fully approved; and is now regarded as a leading case. It is so treated in the leading cases in equity by White & Tudor, see vol. 2 p. 946.

The case of *Brown* v. *Higgs*, is justly celebrated for the elaborate consideration it received. It was first heard by Lord Alvanly, then master of the rolls, see 4 Ves. 708, was reheard by him, 5 Ves. 495; and appeal being taken from his decision, it was heard by Lord Eldon, 8 Ves. 561, and carried then by appeal to the House of Lords. But the original decree was in all these stages affirmed. In that case the testator by his will bequeathed a leasehold estate to A upon certain trusts, and then proceeded : "After the above trust is performed, I authorize and empower my nephew, John Brown, to receive the remainder of the rent, that arises from my estate at Brige Norton, and apply the same in certain specified ways, employ the remainder of the rent to such children of my nephew, Samuel Brown, as my said nephew, John Brown, shall think most deserving, and that will make the best use of it, or to the children of my nephew, William Augustus Brown, if any such there are, or shall be." 4 Ves. p. 709. John Brown died in the testator's life time.

The Master of the Rolls, in 4 Ves. 719, says : "The will is equivalent to saying, he gives it to the children of Samuel Brown, or of William Augustus Brown, with a power to John Brown to give to any he thinks fit, and to exclude the others; and it is too much to contend for, that nothing is intended for them exclusive of the appointment of John Brown. The fair construction is, that at all events he intended it to go to the children ; and these words of appointment he used, only to give a power to John Brown to select some and exclude others."

The decree of the court in that case was, that the remainder of the rents, after applying them in the way directed by the will, went to all the children of Samuel Brown and the children of William Augustus Brown, if any there are or shall be, the power conferred by the will being held to be a power in the nature of a trust. The case was originally decided in 1799. On the re-

hearing of the case, the Master of the Rolls referred to *Harding* v. *Glynn*, 1 Atk. 469, as exactly in point. 5 Ves. 503, 506. He regarded, that between the words request and desire in that case, and the words of simple power in this, there was an immaterial difference.

The case of *Parson* v. *Baker*, 18 Ves. Jr., *Prescot* v. *Clarke*, 2 Madd. 581, and *Forbes* v. *Ball*, 3 Meriv. 437, follow this decision of *Brown* v. *Higgs*. In the first of these cases the Master of the Rolls placed his decision distinctly on the rule laid down by Lord Kenyon, before cited. In all these cases, which have been cited, the estate or interest of the donee of the power was greater than he was authorized to create.

I cannot see, why a different construction should be put upon a power conferred on one, who has a fee simple estate nominally given him, than would be considered as conferred on one, who had a life estate given; as, though the fee simple was nominally given, yet if a power is given after his death to dispose of his fee simple, and such power is construed as a power in the nature of a trust, it necessarily cuts down the fee simple estate in the donee to a life estate; and why then should the same power be differently construed, if instead of this constructive life estate, an express life estate was conferred on the donee, with power to dispose of the fee simple to a certain class of persons? See *Wright* v. *Atkins*, 17 Ves. 255.

In *Birch* v. *Wade*, 3 Ves. & Bea. 198, the will provided: "It is my will and desire, that the other third part of the principal of my estate and effects be left entirely to the disposal of my dear and loving wife among such of her relations, as she may think proper, after the death of my aforesaid sisters." He had previously by his will given all his property to trustees, directing them to pay the interest thereof to his wife for life, and after her death, to his brothers and sisters for life, and after their death, two-thirds of the principal to their children, in a certain mode. The wife died without making any disposition.

The Master of the Rolls says : " One-third of the principal is left to her disposal amongst a particular class of persons, leaving it to her to select from that class such individuals, as she thinks proper. We cannot stop in the middle of the clause, and say, that all he willed was, that she should have the disposal of one-third ; but that it was no part of his will and desire, that her relations should have the benefit of that disposition. I think the intention was, that her relations, at least such of them as she should designate, should have the benefit of that third. He had already made a disposition in favor of his own relations ; and given them everything he intended to give them. Her relations, living at her death, will be entitled, though there was no selection made by her."

In this case the wife had but a life estate, and yet was empowered to dispose of one-third of the principal. It is true, that the will was worded : " I will and devise, that this other third be left to the disposal of my wife among her relations." But surely this cannot be construed differently, from what the will would have been, had it simply empowered his wife to make such disposition. In *Grieveson* v. *Kersopp*, 2 Keen 653, the same principle was decided.

In *Cropling* v. *Cropling*, 2 Cox 396, the terms of the power were imperative, yet as it was not executed, the fee was held to descend to the heirs at law of the testator. The only ground for this decision was, that the donee of the power had only a life estate. This case is in effect overruled by the subsequent cases of *Birch* v. *Ward*, 3 Ves. & Bea. 198, and *Grieveson* v. *Kersopp*, 2 Keen 653, before referred to.

It may be fairly deduced from the case of *Whetmore* v. *Trelawney*, 6 Ves. Jr. 129, that the donee of a life estate, with power to devise a fee simple to a class of persons, dying without executing this power, the property would pass, in Lord Eldon's opinion, to this class of persons, it

being a power in the nature of a trust. This point was not however decided in that case.

In *Brown* v. *Pocock*, 6 Sim. 257, the report is imperfect; and it does not appear, in what words the power was conferred. The donee had but a life estate. The substance of the power, however worded, was to leave by will £4,000 in stock to his wife and children. The power was not executed; but it was held, that it was a power in the nature of a trust; and the wife and children were entitled to the £4,000 in stock.

In the case of *Grant* v. *Lymann*, 4 Russ. 292, though not decided, it being unnecessary to determine the question, yet it can be inferred, that the Master of the Rolls was of opinion, that where a tenant for life was given power to dispose of the same to any of her family, she might think proper, this was a power in the nature of a trust; and if she had died without executing the power, her next of kin would have been entitled to the property. The objection, that the donee of the power had but a life interest, was not in that case distinctly raised, or passed upon; but it is apparent in that case, that the court disregarded entirely the supposed distinction between words of request and those of mere authority.

In the case of *Burrough* v. *Philcox*, 5 Myl. & Cr. 72, the objection, that the donee of the power had but a life interest, was distinctly raised and ably argued. The power in that case was given to a tenant for life, it was limited to a particular class, but the donee had an unlimited right of selection among that class. The power was to dispose by will of the whole of the testator's estate, among his nieces and nephews, or their children, giving all to one, or giving to as many as the donee of the power might think proper. It was held, that this power was imperative, and amounted to a gift to all the nieces and nephews and their children, subject only to the power of selection, given by the will to the donee. It was held, that the fact, that the donee of the power had no interest in the property under the will but a life interest, was

70

entirely immaterial; it made no difference in whom the fee was vested, where the power was to be executed, if the persons to receive the property were pointed out with certainty. The Lord Chancellor in this case says: "*Witts* v. *Boddington*, 3 Bro. C. C. 95, 5 Ves. 503, and other cases reviewed by him, show, that when there appears a general intention in favor of a class, and a particular intention in favor of individuals of a class, to be selected by another person, and the ;particular intention fails, from that selection not being made, the court will carry into effect the general intention in favor of the class. When such an intention appears, the case arises, as stated by Lord Eldon in *Brown* v. *Higgs*, 8 Ves. 574, of the power being so given, as to make it the duty of the donee to execute it, and in such case, the court will not permit the object of the power to suffer by the negligence or conduct of the donee, but fasten on the property a trust for their benefit."

Upon the question: What effect on the construction of the will should be produced if the fact that the donee had but a life interest, and not an interest extensive enough to enable the donee out of his estate to discharge his duty of executing the power, by granting to such of the objects of the testator's bounty, as he thought proper, such a portion of the interest or estate of the donee as he elected? the Lord Chancellor says: "much argument was urged at the bar, upon the ground that the donee of the power had no estate in the property under the will, beyond a life estate. In my view of the case, this is quite immaterial. It is not certainly one of those cases, in which property is given with the expressions added as to the disposal of it, which was held to fix a trust upon the gift; but the whole property is given to trustees; and the question is, whether there be found in the will a sufficient declaration of who, in the events which have happened, are to be *cestuis que trust*. If that be sufficiently expressed, it is immaterial whether the donee of the power be also trustee, or whether the trust be vested in others. In

*Birch* v. *Wade*, 3 Ves. & Bea. 198, the property was given in trust; and the donee of the power was only tenant for life. In this case, upon the authority of *Brown* v. *Higgs*, I think myself justified in giving effect to the intention, which appears to me to be sufficiently apparent upon the will, of giving the property to the nephews and nieces and their children, subject to the selection and distribution of the survivor of the son and daughter; and that they all constitute the class to take all the property as to which no such selection or distribution has been made."

In the case of *Kemp* v. *Kemp*, 5 Ves. 849, the testator, after disposing of some legacies, says : " what remains, after paying these legacies, I give to my cousin, Martha Kemp, for her *life*, and then to be disposed of among her children, as she shall think proper;" and the court held, that this was a case, in which the donee was bound to execute the power. The court held it was a power in the nature of a trust. And the cases of *Walsh* v. *Wallinger*, 2 Russ. & M. 78, and *Kennedy* v. *Kingston*, 2 J. & W. 431, were somewhat similar.

In *Randall et al.* v. *Wearle et al.*, 1 Anst. 124, it was decided, that a devise to A for life, *with liberty* to leave the same to whom she thought most deserving of it, *recommending* to her to have due regard to the testator's mother's relations, is *not mandatory* as to the objects of the appointment.

The case of *Bull* v. *Vardy*, 1 Ves. Jr. 270, is strongly relied upon by the appellant's counsel, as showing, that the power conferred upon Mrs. Rice is not a power in the nature of a trust, and that it is a mere naked power, which must be executed to give it any effect. In this case the testator devised to his wife several houses, and, after numerous specific legacies, made her residuary legatee under the following clause : " I empower my wife to give away at her death £1,000, to A and B £100 each, the rest to be disposed of by her will." It was decided she did not have an absolute property in this £1,000.

Lord Chief Baron Eyre, after setting out the will and stating that the wife died without making any disposition of this £1,000, or any part of it, says:

" It was insisted for the plaintiff, that the £100, which the wife was empowered to give, was sufficiently devised by the will, and argued, that expressions imparting recommendation, desire, request, &c., are in their nature, at least in a will, compulsory and words of devise ; therefore where the testator empowered his wife to give to a certain object a certain sum, that is a legacy. Many cases were cited as authority for this from 2 Vern. 153 down to *Wymer* v. *Hawkins,* 1 Bro. C. C. 179.

"The clear result of all is, that when the absolute interest is given to one, with any expression, that the devisee shall dispose of the whole, or a part, to a particular person, that does not amount to a devise properly : but will raise a trust for that person, which the court will execute after the death of the devisee. For the defendant it was truly observed, that this doctrine would not affect the present case ; because the wife had not only no absolute interest in the £100, but none at all : so there is nothing to raise a trust. The devise therefore to her is merely a naked power, which the principle of these cases does not touch. From some of these cases this doctrine also arises, which is near to the present case : that a devise to one for life, or absolutely on the face of it, with directions that he shall dispose of it to another at his death, shall operate as an immediate devise without any such disposition.

" In arguing the case in 2 Vern. 467, it seems to be admitted, that a devise to one for life, with directions, that at his decease it shall go to J. S., is an interest for life in the first devisee, remainder over. Here the testator empowered his wife to give £1,000. The word 'empower' must be understood to be imperative, as the only possible medium to make it the testator's own bequest. If it can be so considered, the testator may be considered as doing that, which he compels another to

do ; and in a will, where the intent is everything, it may operate without the assistance of the instrument.

"But can it be considered from the word 'empower,' that he intended the two parties named to have each £100, after the death of the wife, at all events? As to the £800, it cannot be said he devised that sum ; because no object was marked out by him. Unless she selects objects, the devise cannot take effect. As to the persons named, if his intention was they should in all events take, why devise to them differently from all the other pecuniary legacies ?

"The plain meaning of the word with the context seems to be this : He gives the residue of his estate to these women, named Crowe, but says his wife may dispose of a £1000, if she pleases ; if she does, she must give £100 to each of these women ; the rest as she pleases. The word 'empower' in its most obvious sense is unfit to create a charge. The party must execute the power to create a charge. Upon the whole we are of opinion, the plaintiff is not entitled to this sum of £100 ; and the bill must be dismissed."

I have given the whole opinion above of Lord Chief Baron Eyre, as the case appears to be one, on which the appellants rely more than any other. It seems to me to have scarcely any application to the case before us, because it is based expressly on the ground, that the wife had no interest in the property to be disposed of.

We have shown, that in the case before us, the wife had a life estate in the property to be disposed of. Again the learned judge put, in that case, the pertinent enquiry, as to the persons named as recipients of this £100 each : "If his intention was, that they should take at all events, why devise to them differently from all his other pecuniary legacies ? "

The case would obviously have been materially different, had his wife had the selection, to which of these two persons, and in what proportion, this £200 should be given. Then a very good reason could have been as-

signed, why this bequest was worded differently from his other pecuniary legacies.

Again, in that case there were residuary legatees, who, if the power was not executed, would take his whole estate ; and this it was natural for the testator to provide, if he intended to leave it optional with the devisee of the power, to execute it, or not, at her pleasure. In our case no residuary legatee is made by the will.

The case of *Marlborough* v. *Godolphin*, 2 Ves. Sr. 61, and *Malim* v. *Keighley*, 2 Ves. Jr. 333, are also relied upon by the appellants' counsel.

In the first of these cases there was a devise of £30,000 to testator's wife for life, and afterwards to be distributed among his children, as she by deed, will, or instrument in the nature of a will should appoint. She having married again appoints by will (*inter alia*) unto two of the children, who died in her life time ; and it was decided, that their representatives were not entitled ; and that the shares, so appointed to them, lapsed, and fell into the residue.

As before stated, no effort of legal acumen can reconcile this decision of Lord Hardwick with the previous decision of *Harding* v. *Glynn*, 1 Atk. 496, also decided by him ; and the cases before commented on abundantly show, that the decision of *Marlborough* v. *Godolphin* has not been followed, but the case of *Harding* v. *Glynn*, which it is admitted cannot be reconciled with it, has been often followed and approved.

The other case, *Malim* v. *Keighley*, 2 Ves. Jr. 333, simply decided correctly, that a trust was raised under a recommendation by will to a legatee, to dispose of her legacy among certain persons after her death ; and that a testator by showing his desire creates a trust, unless there be plain words, or a necessary implication, showing that there is to be a discretion, to defeat it.

But it is the language used by Sir Richard Pepper Arden, the Master of the Rolls, in delivering his opinion, which is relied upon. He says : " I will lay down the

rule as broad as this: wherever any one gives property,
and points out the object, the property, and the way in
which it shall go, that creates a trust, unless he shows
clearly, that the desire expressed is to be controlled by
the party; and that he shall have an option to de-
feat it. If a testator shows his desire, that a thing shall
be done, unless there are plain express words or necessary
implication, that he does not mean to take away the dis-
cretion, but intends to leave it to be defeated, the party
shall be considered as acting under a trust."

This, it seems to me, lays down the law correctly, if it
is understood, that the desire of the testator may be
shown otherwise than by direct words. If this desire
can be fairly inferred, from what the testator has pro-
vided in his will, it must control, or modify, the discre-
tion given.

The American authorities throw generally but little
light on the subject. Their general tendency is to give
less effect to precatory words, or words of recommenda-
tion, when a devise is sought to be converted thereby
into a trust, than do the English cases; but they do not
elucidate the matters under consideration in this case.

In *Holt* v. *Hogan*, 5 Jones (N. C.) Eq. 82, the will
provided: " I give and bequeath to my beloved wife,
Elizabeth Hogan, the use of the manor plantation and
land adjoining during her life, and one-half of all my
personal estate, that may be left after paying the above
named legacies; and one-fifth part of all the marketable
produce, that may be raised on my mill plantation, du-
ring her life, *with the privilege* of disposing of the same
by will, or otherwise, amongst our children at her
death."

A bill was filed to obtain a construction of this will.
There were other clauses in the will, whose meaning was
doubtful, and about which there was controversy; but
there does not appear to have been any controversy
about the above quoted clause; as the property would
have gone to the same parties, whether this clause was to

1878
June Term.

Milhollen's
adm'r
v.
Rice *et al.*

be construed as a power in the nature of a trust, or a mere naked power. It was never executed properly. The court held, the property, embraced by this power, was to be distributed, as undisposed of property, among the distributees of the testator. They do not discuss the question, whether this was a power in the nature of a trust, as it was unimportant to the parties, whether it was so considered, or whether it was considered a mere power.

The only question, really considered and decided, was: whether there was a proper execution of the power in that case. The court held, there was no proper execution of the power, because a person, having a power of appointment for the benefit of others, cannot use it for her own benefit; and if attempted, such execution of a power is entirely inoperative. They doubted, though they did not decide, whether it was not also inoperative, as she did not profess to dispose of her husband's property.

The fact that so little consideration was given to the only point, which could have any influence in the decision of this case, renders this decision one, which can have but little weight in considering the case before us.

On the contrary, the case of *Dominick* v. *Sayre*, 3 Sandf. 559, is entitled to much weight, as the principal point of controversy in our case was fully considered in that case; most of the English cases we have considered were reviewed; and an able opinion was delivered by Judge Duer. Besides Virginia cases, there are no other American cases, which I have seen, which throw light on this case.

The case of *Shermer* v. *Shermer's ex'r*, 1 Wash. 266, and *Goodwin* v. *Taylor*, 4 Call 305, were, as we have seen, probably decided on the ground, that the life tenant, by suffering herself to die intestate, had constructively executed the power of attorney by disposing of the property to her heirs, and she thus having a life estate

with remainder to her heirs under the will, the rule in Shelley's case applied, and her life estate was enlarged to a fee simple. But it may be, these cases were decided on the ground, that the powers given were powers in the nature of a trust, and being unexecuted, the court would enforce the trust, and give the property to her heirs; and thus taking it under the wills respectively, she having a life estate, and her heirs a remainder in fee, under the wills respectively, the rule in Shelley's case applied, and her life estate was enlarged to a fee simple. If these cases were decided on this principle, they are strong cases to give the real estate in the case before us to her heirs, under the will of William Milhollen; for we have seen, the rule in Shelley's case can have no application in this case.

The following are the other Virginia cases, which have more or less bearing on the decision of this case.

In the case of Guthrie v. Guthrie, 1 Call 7, the will was made prior to the act of 1778, which provided a fee should pass by an indefinite .devise, without the addition of words of inheritance. The will gave lands indefinitely, with a power to dispose of them; and it was held, this passed a fee simple; this case is therefore in accord with the numerous English and American cases, we have heretofore cited.

In the case of Morris v. Owens et ux. and Edwards, 2 Call 520, the testator by will devised personal property to his wife during widowhood, and then to be divided, at her discretion, among the testator's children. As to such of the property, as she did not dispose of, the court held, that it should pass to the distributees of the testator.

This would have been its destination, whether the court had considered, that this was a power in the nature of a trust, or had considered it a mere naked power. In the one case these distributees would have taken under the will; and in the other case they would have taken,

as distributees, this property, as undisposed of by the will. In that case therefore it was unimportant, which was the true construction of the will. The court however in its opinion say, that they took the property, as undisposed of by the will.

*Crossling* v. *Crossling*, 2 Cox 396, was referred to as sustaining this position. The case, we have seen, has been repeatedly overruled in England. It proceeded on the broad ground, that if a devisee had but a life estate, no power, though imperative in its express terms, would be treated as in the nature of a trust. In such a case such a power has often been so treated. There seems to have been but little consideration given this question in this case, as it was immaterial, whether it was a power in the nature of a trust, or not; the same parties receive the estate, whether it was a power in the nature of a trust, or a naked power, which was unexecuted. The case is therefore entitled to but little weight.

The case of *Hudson* v. *Hudson's adm'r et al.*, was a case very similar to this. The testator by his will gives his slaves to his wife, for life, and directed, that the same should be disposed of, after her death, among his children, as she should think proper. The slaves, undisposed of by her, it was decided, should be divided among his children and their representatives. But it should be here noted, that the court, though they refer to *Owen* v. *Morris*, 2 Call 520, carefully avoid saying, that it went to his children, as property undisposed of by his will, as was said in *Owen* v. *Morris*.

The inference I draw is, that the court had discovered the error, into which they had fallen in this case from inadvertance, the question being unimportant. It is true they do not say, in *Hudson* v. *Hudson's adm'r et al*, in what capacity the children are to take the slaves; but their omission to say, as in the other case, that they took as distributees of the testator, justifies us in concluding, that they regarded them as taking as legatees under the will, or in other words, that the power given was a

1878
Special Term.

Milhollen's
adm'r
v.
Rice *et al.*

power in the nature of a trust. This inference is strengthened by other things said in their opinion. It may be regarded therefore as destroying any influence in this case before us, that the unnecessary expressions in the opinion of the court in *Morris* v. *Owens*, 2 Call 520, might have had.

In the case of *Knight* v. *Yarbrough*, Gilm. 27, the testator bequeathed land and personal property, "to live upon, pay my debts, and dispose of among my children and grandchildren, as she pleases; and should she find it necessary to sell all or any of the lands, to convey and make titles thereto, which title so made shall be valid to all intents." But the court held, "that by the true construction of this will the testator intended to create a trust in his wife, for the benefit of his children and grandchildren; and to empower to appoint the same among them, in such proportions as she thought proper; so that each object of his bounty should have a reasonable share; and that in that case all the appointments, attempted to be made by her will, ought to be declared void, they being repugnant to the intention of the testator; and that the correct rule in such case is, that when the trustee, who alone is confided in to make discrimination as to quantity, fails to do so according to the confidence reposed, the court must adopt equality as the rule."

In the case of *Frazier* v. *Frazier's ex'r*, 2 Leigh 642, the syllabus says: " the testator bequeathed his personal estate to his brother, J., to be sold, and the proceeds to be distributed by the brother among testator's next of kin, according to their deserts, as he should see at a future time, what may turn up; the brother dies without making an appointment: held, that the testator is to be regarded as intestate *quoad* this subject; and the same is distributable among the next of kin according to law. The court however says nothing on the subject. The property was held to be distributable among the next of kin, I presume, not because the testator was to be regarded as dying intestate as to it, but because it was

either a trustor a power in the nature of a trust, which being unexecuted, the property must go to the next of kin of the testator, as the legatees under the will.

In *Mitchell* v. *Johnson, &c.*, 6 Leigh 461, the testator bequeathed personal property to his wife for life, and then to be disposed of among his lineal descendants, as she should think proper. The court held, "that the personal property bequeathed to the wife, for life, was, subject to the power of appointment vested in her, which was a trust for the objects of the appointment; and as the power was not executed by the trustee, the subject should be divided among the testator's lineal descendants, according to the statute of distributions."

I have examined various other Virginia cases, to which I have been referred; but these are all the cases, which I have seen, which throw light on the subject under discussion; and some, I have quoted, have but little bearing on the subject. The Virginia cases tend to confirm my view of the law, as deduced from the English cases.

As I understand the law, deducible from the English and Virginia cases, three things are necessary to create a power in the nature of a trust: first, there must be certainty in the subject, that is, the property to be disposed of must be clearly defined; secondly, there must be certainty in the object, that is, the beneficiaries, where the power is executed, must be certain; but by this is not meant, that the will must name definitely the individual person or persons, who are to be the beneficiaries, when the power is executed; but the will must point out a definite class, to one or more, or the whole, of which the donee of the power is to dispose of the whole, or a part, of the subject of the power; and lastly, the power must be imperative; but in using the word imperative, it is to be understood in a sense somewhat different from its ordinary signification.

Its meaning as here used is, that under the will it is his duty to execute the power; and it is to be borne in

1878
June Term.

Milhollen's
adm'r
v.
Rice et al.

mind, that it is always his duty to carry .out the intent of the testator, as shown by the will, no matter in what language that intent may have been expressed; and if therefore the testator, either by express declaration or fair implication, shows that he wishes the power, he has given, to be executed, it becomes the duty of the donee to execute such power; and such power is then regarded as imperative in the sense, in which I have used the word.

If a testator confers a power by simply authorizing the donee to dispose of definite property to or among a definite class of persons, as the donee may think proper, such a power will be held to be imperative, unless the testator by his will shows satisfactorily, that he had no wish, that such class, or any member of it, should be the objects of his bounty, unless the donee of the power desired. The mere giving of such power raises an inference, that the testator desires it to be exercised, unless it be shown by clear words, or necessary implication, that the testator intended to relieve the donee of the power of the duty of executing it, which duty the mere grant of the power imposed upon him. This must be shown, and that the testator had in contemplation, that the power might not be executed, and designed, that it should not be, if the donee thought proper to leave it unexecuted.

Syllabus 7.

It is always sufficient, that the donee of such power has a life interest in the power, he is thus authorized to dispose of in fee simple among a definite class, in order that such a power may be held to be a power in the nature of a trust. The fact, that the donee of such power has not a fee simple interest, but is only a tenant for life, will not affect the construction of the power, or prevent it from being regarded as a power in the nature of a trust.

It is unnecessary in this case to determine, whether, if such a power of disposition is conferred on a party, who has no interest in the subject, such a power must not

1878
June Term.

Milhollen's
adm'r
v.
Rice et al.

necessarily be construed to be a mere naked power, and not a power in the nature of a trust.   It may be, that the construction of a power, conferred on one having no interest in the subject, might depend upon, whether the objects, to whom he was to dispose of the property, were named, and the exact amount of property, each was to receive, was named; or whether the objects were a definite class, out of whom the person, on whom was conferred the power, was to select one or more persons at his pleasure.   But on this question I express no opinion, as it is not involved in this case according to the construction I have given this will.

My conclusion from the law as thus laid down is necessarily, that the power conferred on his wife by William Milhollen in his will was a power in the nature of a trust, for the benefit of her heirs, which being unexecuted by her, the court will give the moiety of the proceeds of the sale of the testator's lands to her heirs, as the beneficiaries intended by the testator, subject to her selection among them, which selection she having failed to make, the court could not make, but would have to distribute the proceeds among her heirs equally.

It remains then only to determine, who were her heirs.

Syllabus 6. Does this word, " heirs," here, mean heirs in its natural and legal signification ; or does it mean heirs apparent ? Does it mean the parties, who by the law in force at her death would have inherited her real estate; or does it mean such persons as would have inherited her real estate, had she died when the testator died, according to the law then in force ?   This question need not be here discussed, as it was fairly presented to this court in the case of *Stewart* v. *Reid supra*.   This case was under consideration, when that case was decided; and the arguments of counsel in this case, as well as the authorities cited by them, were carefully examined, and duly weighed.   We have seen no occasion to question the accuracy of our conclusions in that case.   The reasons which led to those conclusions, are set forth at length in this case, and need not be repeated.

Our conclusion in this case, as in that, is that the word
" heir," whenever used in the will of William Milhollen,
as in the will in that case, must receive its usual legal sig-
nification, and be regarded as the parties, who by the law
in force at his widow's death would have inherited her real
estate.  As she died in 1873, without children or descend-
ants, by ¶II. §I ch. 78 of Code of West Virginia, p. 484,
then in force, her surviving husband, John Rice, was her
sole heir, and being such, by virtue of William Milhollen's
will, he is entitled to one moiety of the proceeds of the
sale of his lands, as his legatee pointed out by the will.
As he takes these proceeds as legatee of William
Milhollen, and not as heir or distributee of his wife, of
course the marriage contract between him and his wife
can in no manner affect his right to these proceeds.  He
does not get it from his wife, she never having had
any interest in the proceeds of this land.  Nor could
she have prevented him from taking it, as the legatee
pointed out by William Milhollen's will, had she desired
and willed it elsewhere, as he was her sole heir, and
therefore no discrimination was left her by the will to be
exercised.

Though the circuit judge, as his written opinion shows,
misconceived the law in many respects; yet he reached
the conclusion, that John Rice was entitled to the moiety
of the proceeds of Wm. Milhollen's lands, as sole heir
of his wife, from whom he inherited a moiety of these
lands.    We have seen, that he is not so entitled ; but that
he is nevertheless entitled to one moiety of the proceeds
of these lands, as the legatee of Wm. Milhollen.

The decree does not state, in what capacity he is to re-
ceive this half of the proceeds of the sale of these lands;
and being right in the disposition made of them, and in
all other respects, it must be affirmed.

We have reached this conclusion by applying to Wm.
Milhollen's will, what I conceive to be established rules
for construing wills.   Had we paid no attention to these
rules of construction, deduced from decided cases ; but

1878
June Term.

Milhollen's
adm'r
v.
Rice *et al.*

looked only to the wording of the will, and from it, and the circumstances surrounding the testator, when the will was made and the testator died, we would have reached the same conclusion.

He gave two negroes to his wife, for life, remainder to his heirs. It is obvious, that he did not intend to make identically the same disposition of the balance of his personalty. If he had, the third clause of his will would never have been inserted. The first clause therefore obviously did not give her a mere life estate in the personalty, other than the negroes. If it had, it would have all gone to his heirs, *i. e.* distributees, after her death, precisely as the two negroes are directed to go. The very words used in the first clause mean naturally, that she should have an absolute property, and not a mere life estate. If that meaning could be regarded as doubtful, the third clause makes it entirely plain.

It is obvious from the second clause of his will, disposing of his lands, that he intended that his wife should have a life estate, and only a life estate, in them; and that, on her death, they should be sold, and one-half of the proceeds should go to his heirs, and the other half to her heirs, with this difference only, that his wife might select among her heirs, which of them she chose to have their half.

Disregarding all artificial rules of construction, no ordinary person could understand the language used, as giving her any more than a life estate in the lands. This language is: " I desire, that all the lands belonging to me shall belong to my wife during *her natural life*, to use in any way she may think proper *during her life*." It would seem impossible to misunderstand this language. It has but one meaning. And he directs, that, after her death, these lands, in which, it is obvious, she was only to have a life estate, were to be sold. Now, it may be asked, could he have directed them to be sold after her death, if he intended her to have a fee simple in them, with power to sell them, and consume the pro-

ceeds in her life time? Such power he never could have intended her to have. It would have rendered senseless his directions, that all his lands should be sold at her death.

Then with reference to the disposal of the proceeds of this sale, one-half of these proceeds is to go to his heirs. There can be no doubt about what he meant by this; those, who would be entitled to his estate at his death, not those entitled to it, if he should happen to die immediately after writing his will—with reference to the other half of the proceeds of this sale he says: "They are to be at her disposal, to whom she thinks proper of her heirs." Is not this the common sense meaning of these words, "to be disposed of by her amongst her heirs, as she thinks proper?" Is it not obvious that he wanted them disposed of among her heirs, and not in any other manner? And is it not equally obvious, that he wanted her, if she chose to exercise the right, to have a right to select among those heirs whomever she pleased? If she did not have any choice, and thus showed her willingness, that it should go to them all equally, is it not obvious, that so holding would be carrying out the testator's wish, that it should go to her heirs? This was his main purpose. His secondary purpose was to let his wife, if she chose, select among them. Would not any ordinary person unaided by decisions, say that, as by his heirs he meant those, who would inherit from him according to whatever law was in force, when he happened to die, so by her heirs he meant such persons, as would inherit from her according to whatever law was in force, when she died? This it seems to me is the plain meaning of his language. He did not mean her brothers and sisters, or her neices and nephews, whom he probably never saw, as their names and residences are still unknown. Had this been his meaning, he would have excluded even a child of his wife, if she should have afterwards had one. Is it possible, that he meant this?

But it is said he did not mean John Rice, a stranger

1878
June Term.

Milhollen's
adm'r
v.
Rice et al.

to his and her blood. He certainly meant a stranger to his own blood. It is not to be supposed, he was speculating, or caring, who would be the recipient of one moiety of the proceeds of the sale of these lands, so only he was an heir of his wife. He took for granted, that the law would make her heir, or heirs, the person or persons to whom she would naturally desire these proceeds to go. He could not possibly tell, who that would be; as an entire change of the relationship of his wife to others might take place after his death. He therefore said, it should go to her heirs.

It is assumed with great confidence, that had he contemplated her subsequent marriage, he would never have been willing, this property should go to her husband, but would certainly have wanted it to go to her collateral kindred. They were not only strangers to him in blood, but were probably entirely unknown to him. Why then should they have been preferred? Is it not obvious, that his wife's wishes were greatly to be consulted in the disposition of this half of the proceeds of this land? Was it not the wish of the testator, that her wishes should be consulted? And did he not only require her to leave it, to which of her heirs she chose? And can there be a doubt, that if her wishes were consulted, these proceeds would go to her husband, rather than to collateral relations, whom she probably never saw, and whose residences were yet unknown?

But this is all mere surmising. The plain meaning of the testator was, that he would leave it to the law, at her death, to determine, who should be her heirs; and he could not possibly tell, who ought to be, when he wrote his will. The law then in force determined, that John Rice should be her heir; and the will of the testator, according to the common sense meaning of the language he has used, is carried out by holding him entitled to one-half of the proceeds of this land.

The decree of the circuit court of May 17th, 1876, must therefore be affirmed; and the appellees must re-

cover of the appellants, to be levied out of the assets of his intestate in his hands to be administered, their costs about their defense in this Court expended, and $30.00 damages.

JUDGES MOORE AND JOHNSON CONCURRED.

JUDGMENT AFFIRMED.